FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

2010 JUN 25 PM 12: 10

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| REED ELSEVIER INC. through its LEXISNEXIS Division, 9443 Springboro Pike, Miamisburg, OH 45342 | : : : : : | CASE NO. (Judge _____ 3:10 cv 248 WALTER HERBERT RICE |
| Plaintiff, | : : | COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF |
| v. | : : | |
| CRAIG M. CROCKETT, as alleged assignee of DEHART & CROCKETT, P.C. C/o Craig M. Crockett, 320 Hempbill Street, Fort Worth, TX 76104 | : : : : : : | |
| -and- | : : | |
| CRAIG M. CROCKETT, P.C., d/b/a CROCKETT FIRM, 320 Hempbill Street, Fort Worth, TX 76104 | : : : : : | |
| Defendants. | : : : | |

Plaintiff Reed Elsevier Inc., through its LexisNexis division ("LexisNexis" or

"Plaintiff"), by and through its attorneys, Faruki Ireland & Cox P.L.L. and Proskauer Rose LLP,

alleges for its complaint as follows, upon knowledge as to its own acts and upon information and

belief as to all other matters:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment and injunctive relief against

Defendant Craig M. Crockett ("Crockett"), as purported "assignee" of DeHart & Crockett, P.C.,

and Defendant Craig M. Crockett P.C., d/b/a Crockett Firm (collectively, "Defendant" or

"Crockett"). Crockett commenced an arbitration against LexisNexis before the American

Arbitration Association ("AAA"), styled as an alleged "class arbitration" (the "AAA

Arbitration"). Crockett has purported to assert claims against LexisNexis on behalf of a putative

class of comprised of two, subclasses: (i) all law firms that subscribed to flat-rate pricing plans

with LexisNexis (the putative "Law Firm Subclass"), and (ii) *all clients* of the law firms

comprising the putative Law Firm Subclass (the putative "Client Subclass").

2.      LexisNexis is seeking a declaration that Crockett is precluded, by law, from

pursuing any claims in arbitration on behalf of any purported class. The arbitration agreements

upon which Crockett bases his arbitration demand, by their plain terms, do *not* authorize

arbitration on a class basis. Accordingly, as confirmed by the Supreme Court's recent holding in

*Stolt-Nielsen v. Animal Feeds Int'l Group*, 559 U.S. __, 2010 U.S. LEXIS 3672 (April 27, 2010),

the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA") bars Crockett from seeking to

compel class arbitration, and the AAA (and any arbitrator appointed by the AAA) lacks power to

conduct such an arbitration.

3.      LexisNexis is also seeking a second declaration, in the alternative, that Crockett is

precluded from asserting claims on behalf of a putative class in the AAA Arbitration because the

vast majority of members of the putative class that Crockett has alleged are *not* parties to any

arbitration agreement at all with LexisNexis, much less an arbitration agreement that is

substantively the same as the arbitration agreement between LexisNexis and Crockett.

4.      LexisNexis is also seeking further necessary and proper relief pursuant to 28

U.S.C. § 2202 in the form of a preliminary and permanent injunction enjoining Crockett from

pursuing class claims in arbitration.

## **PARTIES**

5.    LexisNexis, a division of Plaintiff Reed Elsevier Inc., is a provider of computerized and electronically accessible workflow solutions for the legal, corporate, government, and academic user, as well as other markets.  LexisNexis is well known for the specialized services it provides to the legal market, including its famous Lexis® computerized legal research services (also known as LN Online Service).  LexisNexis also provides computer-based practice management solutions for lawyers and law firms.  Reed Elsevier Inc. is incorporated under the laws of the State of Massachusetts and maintains its principal place of business in the State of New York.  The LexisNexis division of Reed Elsevier Inc. maintains its United States headquarters in Dayton, Ohio.

6.    Defendant Craig M. Crockett is a lawyer who, on information and belief, is a citizen of the state of Texas and resides in Tarrant County, Texas.  Mr. Crockett purports to be the assignee of Craig M. Crockett, P.C., d/b/a Crockett Firm and DeHart & Crockett P.C. (the "DeHart Firm").

7.    The DeHart Firm was, on information and belief, a Texas law firm of which Craig M. Crockett was previously a partner and/or shareholder, and which allegedly was dissolved in October 2009.  The DeHart Firm was, on information and belief, a Texas professional corporation authorized to practice law, and maintained its principal place of business in Fort Worth, Texas.

8.    Defendant Craig M. Crockett, P.C., d/b/a Crockett Firm (the "Crockett Firm") is, on information and belief, a law firm of which Craig M. Crockett is sole principal and/or shareholder.  The Crockett firm is, on information and belief, a Texas professional corporation authorized to practice law, and maintains its principal place of business in Fort Worth, Texas.

3

On information and belief, the Crockett Firm was established as the DeHart Firm was winding down.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a), based on the diversity of citizenship of the parties. The amount in controversy, exclusive of costs and interest, exceeds $75,000.

10.      Crockett initiated the AAA Arbitration on or about February 25, 2010, by filing a document styled "Demand For Class Arbitration" with the AAA. On or about March 24, 2010, Crockett filed with the AAA a second, lengthier document also styled as a "Demand For Class Arbitration." (The AAA has assigned AAA Case No. 11 117 00419 10 to the AAA Arbitration.) By letter-decision, dated April 29, 2010, the AAA determined that, as required by the parties' arbitration agreements, any hearings in the AAA Arbitration would be held in Dayton, Ohio. This Court has personal jurisdiction over Defendant by virtue of, *inter alia*, those same agreements, the AAA's locale determination for the AAA Arbitration, and Defendant's initiation and prosecution of the AAA Arbitration.

11.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).

## FACTS

### The Relationship Between LexisNexis and Defendant

12.      Between 2006 and 2009, the DeHart Firm and the Crockett Firm each entered into written agreements with LexisNexis concerning, among other things, subscriptions to use LN Online Service. Defendant's AAA Arbitration is premised on three such written agreements entered into during or subsequent to 2006. Copies of those three agreements were attached to both of the two "Demand[s] For Class Arbitration" that Crockett filed with the AAA. Each of

4

those agreements was signed by either Craig M. Crockett or his partner and fellow shareholder in the DeHart Firm, J. Cort DeHart.

13.     The DeHart Firm and the Crockett Firm each negotiated those agreements with LexisNexis, choosing the services that the law firms desired and the fee arrangements they found acceptable. Each of those agreements provided that flat fees would be charged to the law firm for research conducted by authorized users when using a defined set of sources or services available on the LN Online Service (such as certain sources or databases specific to Texas law). These flat rate plans are referred to by Crockett as "Preferred Pricing Materials Subscription Plans" ("PPM Plans"). Fees for research conducted with sources (*i.e.*, databases) outside of the applicable PPM Plan were charged on a per transaction basis at regular rates established by LexisNexis.

14.     Under the relevant agreements, the DeHart Firm also purchased a license to use a computer-based system, known as LexisNexis Total Practice Advantage™, that integrated practice management software, research, training and other services useful in the management and running of a law firm business.

15.     Crockett admitted in the AAA Arbitration that the terms of the PPM Plans, including those in the agreements between the DeHart Firm or the Crockett Firm and LexisNexis, were the product of negotiation between the law firms and LexisNexis. Crockett specifically alleged, in the Second Demand for Class Arbitration that he filed with AAA, that with PPM Plans, LexisNexis customers "could *negotiate* a specific rate for access only to the databases that met their usage and research requirements, rather than to a broader array of databases [available on the LN Online Service] that were more expensive."

16.     Crockett further admitted before the AAA that, under those agreements, if the subscriber or "users" at the subscriber law firm (*e.g.*, authorized attorneys, legal assistants and support staff) used sources outside of the negotiated PPM Plan, they would be charged for such services at regular additional out-of-plan charges on per transaction rates. The claims Crockett seeks to assert before the AAA, on behalf of two purported subclasses, allegedly concern those out-of-plan charges.

**The Arbitration Claims**

17.     Crockett commenced the AAA Arbitration on or about February 25, 2010. Crockett's original filing was entitled "Commercial Arbitration Rules Demand for Class Arbitration" (the "First Demand"). In that one-page form, Crockett asserted a purported claim on behalf of himself and, allegedly, for "all others similarly situated who were subscribers to the [PPM Plan] with [LexisNexis] from 2005 to the present." The entirety of Crockett's alleged "class" claim was set forth in a single sentence in the First Demand.

18.     Thereafter, on or about March 24, 2010, Crockett filed a second "Demand for Class Arbitration" (the "Second Demand") in the same AAA Arbitration. Crockett's Second Demand is far lengthier than his first — it is a 26-page, 84-paragraph pleading, asserting seven purported claims. Nonetheless, the Second Demand provides little more in the way of an alleged factual basis for Crockett's purported "class" claim, than his single-sentence First Demand.

19.     Although Crockett's Second Demand added few non-conclusory allegations of material facts, it does greatly expand the scope of his alleged putative class. Crockett now, through that Second Demand, purports to bring claims in arbitration on behalf of himself and two putative subclasses: (1) all law firm "Customers Using LN's Research 'Packages'" (the putative "Law Firm Subclass"); and (2) all "*Clients* of Customers Using LN's Research 'Packages'" (the putative "Client Subclass"). Crockett also purports to seek an award on each purported claim "in

6

an amount not less than $500 million." Crockett has demanded that a single arbitrator hear and

decide this alleged class arbitration.

**The Arbitration Clause**

20.    Crockett bases his alleged right to bring a class action arbitration solely on the

three purchase/license orders or subscription agreements for LexisNexis services that the DeHart

Firm or the Crockett Firm had entered into with LexisNexis. None of those three agreements

even mentions class arbitration, and none contains any provision authorizing that special form of

proceeding.

21.    The arbitration clause in each of Defendant's three agreements is substantially the

same and provides, in relevant part:

> [A]ny controversy, claim or counterclaim (whether characterized as
> permissive or compulsory), arising out of or in connection with this Order
> (including any amendment or addenda thereto), whether based on contract,
> tort, statute or other legal theory (including but not limited to any claim of
> fraud or misrepresentation) will be resolved by binding arbitration under
> this Arbitration Section and the then-current Commercial Rules and
> supervision of the American Arbitration Association. The duty to arbitrate
> will extend to any employee, officer, agent or affiliate of either party. The
> arbitration will be held in the United States headquarters city of the party
> not initiating the claim except all claims initiated by LN for non-payment
> will be held in Dayton, Ohio. . .
>
> Issues of arbitrability will be determined in accordance and solely with the
> federal substantive and procedural laws relating to arbitration. In all other
> respects, the arbitrator will be obligated to apply and follow the
> substantive law of the states as specified [herein] and if not specified the
> law of the state of New York.
>
> *      *      *
>
> In order to facilitate resolution of controversies or claims, the parties agree
> to keep negotiations, arbitrations and settlement terms confidential.

22.    The arbitration clause further provides that

> "each party will bear its own attorneys' fees and other costs . . . associated
> with the arbitration. . . . If court proceedings to stay litigation or compel

7

arbitration are necessary, the party who unsuccessfully opposes such proceedings will pay all associated costs, expenses and attorney's fees which are reasonably incurred by the other party.

23.     By its terms, and as a matter of law under the FAA and in light of the decision of the United States Supreme Court in *Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S.--. 2010 U.S. LEXIS 3672 (April 27, 2010), that arbitration clause does not authorize Crockett to commence any "class" arbitration or to assert claims in arbitration on behalf of any putative class.

**The Confidentiality Requirement**

24.     The arbitration clause in each of the three agreements expressly provides that the "parties agree to keep . . . arbitrations and settlement terms confidential."

25.     A class arbitration, by its inherent nature, cannot be fully confidential.  Among other things, in a class proceeding notices would be sent to putative class members; information pertaining to absent class members would be accessed by the named claimant (*e.g.*, Crockett) and his counsel and other consultants; and settlement terms in class proceedings are not confidential.  The AAA's Supplementary Rules For Class Arbitration, Rule 9, provides, moreover, that the presumption of confidentiality, which ordinarily pertains to arbitrations, does *not* apply in class arbitrations.

26.     A failure to observe the parties' contractual mandate of confidentiality, in the AAA Arbitration, would cause irreparable harm to the putative class members and LexisNexis. Among other things, litigation of the claims that Crockett has asserted in the AAA Arbitration regarding LexisNexis research services will likely require review and production of computerized legal research histories that reflect attorney-client privileged information and/or attorney work product, and in all events could reveal client confidences or other confidential information belonging not only to the law firm themselves, but also (and primarily) to the law

8

firms' clients. Managing the protection of privileged and confidential *client* information, as well as confidential information and trade secrets belonging to the various law firms and to LexisNexis, would be essentially impossible in the "class" arbitration that Crockett purports to bring.

**The Putative Classes on Whose Behalf Crockett Purports to Act.**

27.     Crockett purports to assert claims on behalf of the Law Firm Subclass based on his assumption that all LexisNexis law firm customers that entered into PPM Plans also entered into agreements, with LexisNexis, that include arbitration clauses. Crockett's assumption is false. The respective agreements between LexisNexis and a substantial portion of its law firm customer base do *not* include arbitration agreements.

28.     Crockett also purports to assert claims on behalf of a second and, for all practical purposes, boundless subclass – the Client Subclass, which includes all *clients* of *each law firm* that is a member of the Law Firm Subclass. Crockett does not — and cannot — allege that the members of the putative Client Subclass had *any* agreements at all to arbitrate with LexisNexis over disputes concerning services purchased by the law firms. To the contrary, the members of this putative subclass were *not* the subscribers of the LexisNexis services with respect to any research that may have been conducted by the law firms. Most of those clients did not, moreover, have any direct contractual relationship at all with LexisNexis, and they each presumably had their own arrangements, with their own lawyers, concerning whether and on what terms they would pay their lawyers for whatever charges that the lawyers might incur and/or bill to their own clients. Crockett nonetheless seeks to rope all of those essentially countless law firm *clients* into an arbitration proceeding that they never agreed to, solely because they are clients of law firms that are customers of LexisNexis.

9

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Pursuant To 28 U.S.C. §§ 2201, 2202)

29.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 28 above as if fully set forth.

30.     An actual and justiciable controversy exists between Plaintiff and Defendant concerning the arbitrability of the putative class claims that Defendant has purported to bring in the AAA Arbitration.

31.     Plaintiff is entitled to a declaration that, as a matter of law under FAA and the governing United States Supreme Court decision, *Stolt-Nielsen v. Animal Feed Int'l Group*, 559 U.S. __, 2010 U.S. LEXIS 3672 (April 27, 2010), Defendant is precluded from pursuing any claims in arbitration on behalf of any purported class — in the AAA Arbitration or in any other arbitration — because LexisNexis did not agree to, and the parties' agreements do not authorize, the arbitration of disputes on a class basis.

32.     Plaintiff is also entitled to necessary and proper relief, pursuant to 28 U.S.C. § 2202, in the form of a preliminary and permanent injunction enjoining Defendant from pursuing any class claims, in the AAA Arbitration or otherwise, because LexisNexis did not agree to, and the parties' agreements do not authorize, the arbitration of disputes on a class basis.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment Pursuant To 28 U.S.C. §§ 2201, 2202)

33.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 through 26 above as if fully set forth.

34.     An actual and justiciable controversy exists between Plaintiff and Defendant in connection with the arbitrability of the putative class claims that Defendant has purported to bring in the AAA Arbitration.

10

35.     Plaintiff is entitled to a declaration that, under the FAA and the governing United States Supreme Court decision, *Stolt-Nielsen v. Animal Feed Int'l Group*, 559 U.S. __, 2010 U.S. LEXIS 3672 (April 27, 2010), Defendant is precluded from bringing claims – in the AAA Arbitration or in any other arbitration – on behalf of a putative class that largely is comprised of law firms or law firm clients that are *not* party to any arbitration agreement at all, much less an arbitration agreement that is substantively the same as the arbitration agreement between LexisNexis and Defendant.

36.     Plaintiff is also entitled to necessary and proper relief, pursuant to 28 U.S.C. § 2202, in the form of a preliminary and permanent injunction enjoining Defendant from pursuing any claims, in the AAA arbitration or otherwise, on behalf of a putative class because, with respect to most of the putative class alleged by Defendant, neither LexisNexis nor the putative class members agreed to arbitrate any alleged claims that may arise between them.

## **PRAYER FOR RELIEF**

WHEREFORE, LexisNexis requests judgment as follows:

(a)     For the First Cause of Action:

  (i)     a declaration that Defendant is precluded from pursuing against LexisNexis, in the AAA Arbitration or in any other arbitration, any claims on behalf of any purported class; and

  (ii)     an order preliminarily and permanently enjoining Defendant from pursuing against LexisNexis, in the AAA Arbitration or in any other arbitration, any claims on behalf of any purported class.

(b)     For the Second Cause of Action:

  (i)     a declaration that Defendant is precluded from bringing claims against LexisNexis, on behalf of the putative class alleged the Demand[s] for

11

Class Arbitration that Defendant submitted in the AAA Arbitration, either in that proceeding or in any other arbitration; and

(ii)    an order preliminarily and permanently enjoining Defendant from pursuing against LexisNexis, in the AAA Arbitration or otherwise in any arbitration proceeding, any claims on behalf of the putative class alleged in the Demand[s] for Class Arbitration that Defendant submitted in the AAA Arbitration;

(c)    awarding to LexisNexis all costs, expenses and reasonable attorneys' fees it incurs in connection with this action, in accordance with the terms of the written agreements between LexisNexis and Defendant; and

(d)    awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

Charles J. Faruki (0010417)
    Trial Attorney
Thomas R. Kraemer (0060120)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: (937) 227-3705
Telecopier: (937) 227-3717
Email: cfaruki@ficlaw.com

Edwin M. Baum
Emily Stern
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Telephone: (212) 969-3175
Telecopier: (212) 969-2900
Email: ebaum@proskauer.com

Attorneys for Plaintiff Reed Elsevier Inc.

396363.1

13