**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION (DAYTON)**

```
-----------------------------------------------------------------------x
REED ELSEVIER, INC. through its                          :
LEXISNEXIS Division,
                                                         :
                              Plaintiff,                 :          Case No. 3:10-CV-00248
                                                         :
           v.
                                                         :
CRAIG M. CROCKETT, as assignee
of DEHART & CROCKETT, P.C. and                           :
CRAIG M. CROCKETT, P.C., d/b/a
CROCKETT FIRM                                            :

                              Defendants.                :
-----------------------------------------------------------------------x
```

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**ON ITS FIRST CLAIM FOR DECLARATORY RELIEF**

|  |  |
|---|---|
| Fensterstock & Partners LLP | Frantz Ward LLP |
| 30 Wall Street | 2500 Key Center |
| New York, New York 10005 | 127 Public Square |
| (212) 785-4100 | Cleveland, Ohio 44114 |
|  | (216) 515-1660 |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF FACTS IN DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      ARBITRABILITY OF CLASS CLAIMS
                MUST BE DECIDED BY THE ARBITRATOR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.      The Supreme Court's Holding in *Bazzle* Controls . . . . . . . . . . . . . . . . . . . . . 7

                2.      Arbitrability of Class Claims is Not a Gateway Issue under *Rent-a-Center* . . . . . . 9

        B.      THE CLASS ARBITRATION MUST PROCEED . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                1.      The Parties Agreed to Class Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                2.      The Arbitration Agreement Is Not "Silent" On Class Arbitration . . . . . . . . . . . . 15

                3.      The AAA's Confidentiality Rules Do Not Undermine
                        the AAA's Supplementary Rules on Class Arbitration . . . . . . . . . . . . . . . . . . . 15

                4.      The Contracts Between The Parties Are Classic Adhesion Contracts . . . . . . . . . 19

                5.      Without Class Arbitration, Defendants Have No Practical Recourse . . . . . . . . . 20

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

i

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Arnett v. Myers*,
281 F.3d 552 (6th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chi. Title Ins. Corp. v. Magnuson*,
487 F.3d 985 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Felix v. Young*,
536 F.2d 1126 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re American Express Merchants' Litig.*,
554 F.3d 300 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 20

*Green Tree Fin. Corp. v. Bazzle*,
539 U.S. 444 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 20

*Int'l Union of Elec. Salaried, Mach. and Commc'n Workers of America v. Dubois Chem., Inc.*,
2010 WL 348314 (S.D. Ohio Jan. 26, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Raasch v. NCR Corp.*,
254 F. Supp. 2d 847 (S.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rent-A-Center, West, Inc. v. Jackson*,
—S. Ct. —, 2010 WL 2471058 (June 21, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 10, 20

*Stolt-Nielsen v. AnimalFeeds Int'l Grp.*,
559 U.S. —, 130 S. Ct. 1758 (April 27, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . *in passim*

*Von Arras v. Columbus Radiology Corp.*
2005 WL 1220735 (Ohio Ct. App. May 24, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATE CASES

*Belmont Cty. Sheriff v. Fraternal Order of the Police*,
820 N.E.2d 918 (Ohio 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Page**

### DOCKETED CASES

*Terrapin Express, Inc., et al. v. Airborne Express, Inc., et al.,*
  AAA Case No. 111990153605 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

### RULES AND REGULATIONS

Federal Rule of Civil Procedure 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

AAA's Commercial Arbitration Rule 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Supplementary Rule 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

Supplementary Rule 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Supplementary Rule 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Supplementary Rule 9(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

# I. INTRODUCTION[1]

Plaintiff Reed Elsevier Inc.'s ("REI") motion for summary judgment on its first claim for declaratory relief must be denied as it has misread relevant case law. In its misunderstanding, Plaintiff erroneously overgeneralizes the meaning of "arbitrability" and confuses procedural gateway issues with substantive issues. Just like under the Federal Rules of Civil Procedure, class treatment is a procedural issue, and in arbitrations, procedural issues are to be determined by the arbitrator. Under all Supreme Court precedent, when there is no question, as in this case, that parties have (a) agreed to arbitrate all issues and (b) expressed their intent, through inclusion of the class arbitration rules in the arbitration agreement, to provide for class treatment, the arbitrator is the proper tribunal to decide class issues; not the Court. Plaintiff's fatal misreading would doom consumers and other parties to arbitration agreements nationwide, leaving them with no practical recourse after being injured - no class arbitration, no class action, no courts, nothing other than arbitration on an individual basis. *In re American Express Merchants' Litig.*, 554 F.3d 300 (2d Cir. 2009) (holding this unconscionable). Plaintiff's misreading of the recent U.S. Supreme Court case *Stolt-Nielsen v. AnimalFeeds Int'l Grp.*, 559 U.S. —, 130 S. Ct. 1758 (April 27, 2010) is used to advance its argument that Defendants and other consumers of Plaintiff's LexisNexis ("LN") services have no viable recourse when Plaintiff has wronged them.[2] *Stolt-Nielsen* does not so hold.[3] As Justice Ginsburg clarified, the majority's opinion, even if taken to an incorrect

---

[1] By filing these papers in opposition to Plaintiff's Summary Judgment motion, Defendants do not consent to personal jurisdiction before this Court and reserve all rights and objections. Defendants maintain their motion, filed on July 16, 2010, to dismiss the Plaintiff's Complaint for lack of personal jurisdiction. Defendants file Exhibits A and B to the Affidavit of Blair C. Fensterstock in Opposition to Plaintiff's Motion for Summary Judgment on its First Claim for Declaratory Relief in accordance with the Court's June 30, 2010 Confidentiality Order.

[2] Justice Ginsburg, in her dissent in *Stolt-Nielsen*, clarifies that the majority opinion does not force such a radical result: "When adjudication is costly and individual claims are no more than modest in size, class proceedings may be "the thing," i.e., without them, potential claimants will have little, if any, incentive to seek vindication of their rights. *Amchem Products, Inc. v. Windsor*, 521 U. S. 591, 617 (1997); *Carnegie v. Household Int'l, Inc.*, 376 F. 3d 656, 661 (CA7 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.")." *Stolt-Nielsen*, 130 S. Ct. at 1783.

[3] Further, under established law and AAA procedure, it is for the Arbitrator, not this Court, to make the initial determination as to whether the arbitration agreement in question applies to class claims. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S 444 (2003). As such, and because the Arbitrator has not yet issued a clause construction award under

1

and maximal conclusion, *does not apply to parties to adhesion contracts* such as Defendants and like consumers.[4]

The question of class arbitrability is not a "gateway" issue for the Court under *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. –, 2010 WL 2471058 (June 21, 2010), and as such, this Court should leave this issue for the American Arbitration Association's ("AAA") appointed arbitrator to determine during the clause construction phase as provided for the AAA's Supplementary Rules on Class Arbitration. Fensterstock Aff. at ¶ 9, Ex. H. Yet, even if this Court should find that class arbitrability is a "gateway" issue, it must also find that Defendants, and like consumers, have the right to pursue class arbitration before the AAA. *Stolt-Nielsen* does not stand for the proposition that businesses like Plaintiff can set their own terms in adhesion contracts and cripple the ability of their consumers to act collectively to seek justice on their valid small claims. On the contrary, *Stolt-Nielsen* leaves undisturbed the law and procedure that requires an arbitrator to determine the scope and applicability of an arbitration clause.

Plaintiff makes a number of assertions that are (1) unquestionably in dispute; (2) have not been subject to even minimal discovery; and (3) are not appropriately raised in a motion for summary judgment at this juncture. These include, but are not limited to: (1) the measure of Plaintiff's defective services and misrepresentations to consumers, including Defendants; (2) whether the contracts between Plaintiff and Defendants are adhesion contracts; (3) the size and scope of the putative consumer Class and definition of any consumer subclass; and (4) the number of consumers who, like Defendants, are subject to an arbitration clause. Not only are these factual assertions in dispute, but Plaintiff's motion is premature and misstates relevant case law. Plaintiff cannot sustain its burden of proof required for the granting of a summary judgment motion.

---

AAA Supplementary Rule 3, Plaintiff's motion for summary judgment is not ripe for this Court and must be denied at the outset.

[4] Justice Ginsburg identifies a number of stopping points on an incorrect maximal reading of the majority's opinion, "the Court apparently spares from its affirmative-authorization requirement contracts of adhesion presented on a take-it-or-leave-it basis." *Stolt-Nielsen,* 130 S. Ct. at 1783.

## II. STATEMENT OF FACTS IN DISPUTE

If this Court were to accept Plaintiff's erroneous legal analysis, the AAA's rules and policies would be completely discarded, Defendants and the putative class would be prohibited by law from any practical measure of justice, and future consumers would be precluded from checking the abuses of businesses that have the foresight to insert arbitration clauses into their adhesion contracts. Defendants' individual claims are small,[5] and, like most consumer claims of business wrongdoing, are only viably pursued collectively as members of a class.

The AAA has, since the fall of 2003, in accordance with the Federal Arbitration Act and the Supreme Court's holding in *Bazzle*, 539 U.S 444, developed a set of Supplementary Rules for Class Arbitrations. The AAA's rules and policies, in conjunction with *Bazzle* and relevant state law, have led arbitrators to determine, time and again, that broadly written arbitration clauses, like the one at issue here, permit class arbitration.[6] In fact, of the 135 arbitrations that have reached the AAA's clause construction award phase, 94% held that class arbitration was warranted under the arbitration clause; and only 7 times did an arbitrator determine that the arbitration clause did not permit class arbitration, according to the AAA's amicus curiae brief in *Stolt-Nielsen*.

This Court should honor the plain meaning of the arbitration clause, which Plaintiff drafted, and permit the arbitrator to determine the issue. The AAA's rules and policies would remain intact, and Defendants would have their only viable recourse. Plaintiff and Defendants have agreed to class arbitration, and Plaintiff expressed its agreement to class treatment by incorporating in the arbitration clause, the AAA's Commercial

---

[5]    For example, Plaintiff brought a counterclaim against Defendants for money owed – the contested surcharges. Plaintiff seeks $3,847.09. *See* Exhibit 6 to Declaration of Charles Faruki in Support of REI's Motion for Summary Judgment on its First Claim for Declaratory Relief.

[6]    See Affidavit of Blair Fensterstock in Opposition to Plaintiff's Motion for Summary Judgment, (hereinafter "Fensterstock Aff.") at ¶ 11, Ex.J. Defendants' Counsel has compiled a representative set of class arbitration decisions that reached the clause construction award phase before the AAA. When the arbitration clause is constructed similarly, including the language "any controversy," arbitrators have overwhelmingly interpreted the clause to permit class arbitration.

3

Arbitration Rules. Fensterstock Aff. at ¶ 8, Ex. G. Under *Stolt-Nielsen*, there need not be express text permitting class arbitration; instead there must merely be "a contractual basis for concluding that the part[ies] *agreed*' 'to submit to class arbitration.'" *Stolt-Nielsen*, 559 U.S. —, 130 S. Ct. 1758 at 1783 (emphasis in original).

If Plaintiff's radical legal conclusions were accepted by this Court, Defendants' factual allegations about Plaintiff's systemic wrongdoing will, in all likelihood, never be heard, whether before a court or arbitrator. The facts of the underlying controversy are in stark dispute. Defendants filed an Arbitration Demand on February 25, 2010. *See* Fensterstock Aff. at ¶2, Ex. A. Shortly afterwards, on March 24, 2010, Defendants filed an Amended Arbitration Demand setting forth in great detail their allegations against LN and REI for their promotion and sale of, and charging for, defective electronic research subscriptions plans and products that failed to alert their customers when those customers conducted research outside of their database restrictions, causing Defendants to incur significant usage fees in addition to their normal subscription fees. *Id.* at ¶3, Ex. B. LN and REI filed their Answering Statement on April 19, 2010. *See* Ex. 6 to Declaration of Charles Faruki in Support of REI's Motion for Summary Judgment on its First Claim for Declaratory Relief. In their Answering Statement, LN and REI denied "generally each and every allegation and claim," without further exposition. *Id.*

As explained in Defendants' Amended Arbitration Demand, Defendants brought this class arbitration seeking damages against LN and REI for their promotion and sale of, and charging for, defective electronic research subscriptions plans and products. Plaintiff compounded its bad behavior by applying payments made by Defendants, rather than to Defendants' subscription obligations, to bills that were charged wrongfully by Plaintiff for services outside of the subscription plans. Such payment application put Defendants' accounts in arrears (see Footnote 5, supra), then Plaintiff submitted Defendants' accounts to collection agencies, thereby directly and adversely affecting Defendants' credit ratings. Fensterstock Aff. at ¶3, Ex. B

Defendants, including other putative Class members, represent customers that entered into subscription agreements and product offer contracts for Plaintiff's services and products, including access to a specific set of services and products known as the "Preferred Pricing Materials." LN and REI marketed and promoted their electronic research service plans and products to Defendants and other Class members, who purchased these products and entered into subscription plans governed by subscription agreements, specifically the LexisNexis Subscription Agreement (hereafter, the "Lexis SA"), and purchased Plaintiff's products that were sold pursuant to contracts, specifically the LexisNexis Total Practice Solutions Order (hereinafter, the "Lexis TPSO"). Fensterstock Aff. at ¶3, Ex. B

Under the Lexis SA and Lexis TPSO, Class members who purchased products and subscribed to specific online electronic databases – the "Preferred Pricing Materials Subscription Plan" (hereafter, the "PPM Plan") – were charged a flat monthly fee for unlimited access to those specific products. Thus, Class members could accept a specific rate for access only to the databases that met their usage and research requirements, rather than to a broader array of databases that were more expensive. Under this plan, Class members were to be charged a flat monthly fee for unlimited access to the databases, but if they ventured into databases or products outside of their subscription plans – e.g., outside of the PPM Plan – they would be charged an additional, undiscounted rate for such access.

Plaintiff assured Defendants and Class members that if they ventured outside of their subscription plans, they would be warned prior to incurring the undiscounted usage fees. In fact, no such warnings ever appeared, and LN and REI have admitted such wrongdoing. Defendants and Class members were charged enormous fees for unknowingly accessing databases outside of their PPM Plan. LN and REI falsely represented to Defendants and Class members, through product brochures and flyers that purportedly claimed to "remind" customers about identifying sources inside and outside of there subscription plans, that "A dollar ($) sign next to a source selection indicates that the source is outside of your flat rate subscription plan and is

subject to an additional charge." However, during the class period, Class members, including Defendants, failed to receive any such warnings when they inadvertently accessed database sources not included in their PPM Plan. LN's and REI's failure to alert or notify their customers that they were accessing databases outside of their PPM Plan resulted in Defendants' and Class members' incurring enormous fees.

Defendants complained to Plaintiff that they were wrongfully charged usage fees for unknowingly accessing databases outside of their PPM Plan, and that Plaintiff's products and services did not, as Plaintiff represented, display a dollar sign signaling that the sources were outside Defendants' PPM Plan. Plaintiff at first denied that such a problem existed, before eventually acknowledging the deficiencies in the warning system. Because legal research costs are often passed on from law firm to client, Defendants have proposed a putative subclass of clients who were burdened with the costs of Plaintiff's consumer abuses. The Court need not determine the size, scope, and definition of the putative class and subclass at this time. Indeed, any substantive consideration of the issues in this case is wildly premature and would be wholly improper at this juncture.

Plaintiff disputes these allegations generally in its Answering Statement, in which Plaintiff offers no paragraph-by-paragraph response. Fensterstock Aff. at ¶ 4, Ex. C. Defendants' valid claims are supported by the Affidavits and Exhibits attached to the Amended Arbitration Demand, and are much more substantive than the "mere scintilla of evidence" required to overcome a motion for summary judgment. *Chi. Title Ins. Corp. v. Magnuson,* 487 F.3d 985, 994 (6th Cir. 2007). As such, Plaintiff's motion for summary judgment must be denied.

### III. ARGUMENT

Summary judgment may only be granted if "there is no genuine issue as to any material fact, and. . . the moving party is entitled to a judgment as a matter of law." *Chi. Title Ins. Corp. v. Magnuson,* 487 F.3d 985, 994 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). The moving party has the burden of proving that no

genuine issue as to any material fact exists and that it is entitled to judgment as a matter of law. To meet this burden, the moving party may rely on any of the evidentiary sources listed in Rule 56 or on the failure of the nonmoving party to produce "more than a mere scintilla of evidence" which would create a genuine dispute for the jury. The Court must view all evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* The standard prohibits a court from making credibility determinations. *Arnett v. Myers*, 281 F.3d 552, 559 (6th Cir. 2002). "As we have stated on many occasions, without an adequate factual basis in the record, a District Court should be extremely hesitant to grant summary judgment on important and complex issues." *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976). Because Plaintiff cannot meet this high standard, it is respectfully submitted, that its motion for summary judgment should be denied.

## A.   ARBITRABILITY OF CLASS CLAIMS MUST BE DECIDED BY THE ARBITRATOR

### 1.   The Supreme Court's Holding in *Bazzle* Controls

The appointed arbitrator, not the Court, must determine whether an arbitration clause permits class arbitration. *Bazzle*, 539 U.S 444. To conform with the Supreme Court's decision in *Bazzle,* the AAA created its Supplementary Rules for Class Arbitrations, which structures the class arbitration process. Fensterstock Aff. at ¶ 9, Ex. H. Plaintiff attempts to undermine the precedential value of the Supreme Court's central holding in *Bazzle* and erode the AAA's well-tested rules and procedures in its campaign to force consumers to arbitrate on an individual basis.

Plaintiff's rationale for ignoring the holding in *Bazzle* is based upon a misguided reading of *Stolt-Nielsen*. Plaintiff claims that *Stolt-Nielsen* clarified its decision in *Bazzle*, arguing that *Bazzle* did not establish that an arbitrator may decide whether an agreement permits class arbitration. This is a curious position in light of clear AAA Policy – which Plaintiff has invoked numerous times – which specifically restates the holding in *Bazzle*: "In *Bazzle*, the Court held that, where an arbitration agreement was silent regarding the availability of class-wide relief, an arbitrator, and not a court, must decide whether class relief is permitted." Fensterstock

Aff. at ¶ 10, Ex. I. Indeed, this is precisely what the plurality opinion in *Bazzle* holds. *Bazzle,* 539 U.S. at 453. The *Bazzle* Court opined that there are limited circumstances where it is assumed "that the parties intended courts, not arbitrators" to make the judgment, but the issue of whether arbitration clauses forbid class arbitrations "[do] not fall into this narrow exception." *Id.* at 452; *see also Stolt-Nielsen*, 130 S. Ct. at 1771. Plaintiff misconstrues the fact that *Bazzle* is entirely consistent with *Stolt-Nielsen*. *Bazzle* continues to stand for the proposition that an arbitrator, and not a court, is the right tribunal to interpret the arbitration clause to determine if it permits class arbitration. *Stolt-Nielsen* merely goes one step further, which the Court admits it did not do in *Bazzle*, and provides a guidepost for how arbitrators are to interpret "silence" with respect to class arbitrations in arbitration clauses.

Plaintiff in this case drafted the adhesion contracts containing the arbitration clause *years* after (a) the *Bazzle* decision was issued and (b) the AAA had promulgated its rules and policies regarding class arbitration. Unlike the parties in *Stolt-Nielsen*, Plaintiff received the benefit and guidance that *Bazzle* and the AAA rules offered to contracting parties with respect to class arbitration.[7] As such, Plaintiff was aware of the ramifications of failing to include express language prohibiting class arbitration in the parties' arbitration agreement, yet failed to amend or change it at any time during the relevant class period. Plaintiff failed to include language barring class arbitration. Instead, Plaintiff (a) used and maintained the "any controversy" arbitration clause construction, and (b) explicitly required that the arbitration be administered by the AAA under the "then-current Commercial Rules." The AAA Commercial Rules, since October 8, 2003, incorporate the Supplementary Rules, which, in turn, govern class arbitration. Plaintiff's choices here are *evidence of its*

---

[7]    Indeed, on the AAA's class arbitration website, there is absolutely no confusion regarding the AAA position on class arbitrations: "The AAA administers **Class Arbitrations** (emphasis in original) for cases where (1) the underlying agreement specifies that disputes arising out of the parties' agreement should be resolved by arbitration and (2) the agreement is silent with respect to class claims, consolidation, or joinder." *See* Fensterstock Aff. at ¶ 7, Ex. F. Notably, the AAA's copyright for the content on this website page is 2007, the first year in which Defendants entered into an agreement with Plaintiff. *Id.*

*full intent* that all forms of dispute resolution, via AAA administered arbitration, would be available to the parties, including class arbitration.

The AAA and its arbitrators are more than qualified to evaluate the arbitration agreement in order to determine the scope of arbitration proceeding that the parties have agreed to, where such analysis necessarily involves contract interpretation and the application of arbitration procedures. *Bazzle*, 539 U.S. 444.   The parties contemplated that the issue of class arbitration, as well as any other controversy or claim between them, would be resolved through binding arbitration before the AAA and under the application of the then-current Commercial Rules, which included Rule 7, which grants the Arbitrator the authority to rule on his own jurisdiction.  Given *Bazzle*, the parties' explicit agreement, and the fact that the arbitrator is more than qualified to evaluate the applicability of the arbitration agreement, this issue is absolutely one to be decided by the arbitrator, and not this Court.

> **2.** **Arbitrability of Class Claims is Not a Gateway Issue under *Rent-a-Center***

The Supreme Court has determined that "questions of arbitrability" are <u>not</u> for a Court to decide "where parties would likely expect that an arbitrator would decide the gateway matter." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). The Sixth Circuit has also stated that the "limited function of the federal courts is to ascertain whether the party seeking arbitration is making a claim which on its face is governed by the contract." *International Union of Elec. Salaried, Mach. and Commc'n Workers of America v. Dubois Chem., Inc.*, 2010 WL 348314 (S.D. Ohio Jan. 26, 2010).  Parties can agree to arbitrate "gateway" questions of arbitrability, including whether the parties have agreed to arbitrate and whether their agreement covers a particular controversy. *See Rent-A-Center*, — S. Ct. —, 2010 WL 2471058; *see Howsam,* 537 U.S. 79; *Bazzle*, 539 U.S. 444.  Here, there is no dispute – the parties agreed to arbitrate all controversies.  The only question in dispute is whether this arbitration clause authorizes the *procedure* of class treatment.

Here, the parties specifically agreed, <u>after</u> the Supplementary Rules were promulgated, that <u>any</u> controversy or claim must be resolved through binding arbitration, to be administered by the AAA under the "then-current" Commercial Rules.  As in *Von Arras v. Columbus Radiology Corp.*, 2005 WL 1220735 (Ohio Ct. App. May 24, 2005), the arbitration agreement at issue explicitly directs that the parties' claims shall be arbitrated under the AAA's Commercial Arbitration Rules.  Under Rule 7 of the Commercial Arbitration Rules, "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."  Like in *Von Arras*, the parties have explicitly incorporated the AAA's Commercial Rules, including Rule 7, which serves as "clear and unmistakable evidence of the parties' *intent* to delegate such issues to an arbitrator." *Von Arras*, 2005 WL 1220735.  There can be no doubt that the parties "have clearly and unmistakably vested the arbitrator with the authority to decide the issue of arbitrability, the question of whether a matter is arbitrable is to be decided by the arbitrator." *Belmont Cty. Sheriff v. Fraternal Order of the Police*, 820 N.E.2d 918 (Ohio 2004). Therefore, it is for the arbitrator, and not this Court, to decide whether the parties have an agreement to arbitrate the relevant dispute between them. *Von Arras*, 2005 WL 1220735.

Where there is no question that the parties to the dispute agreed to arbitrate, as in this case, and the parties agreed to assign all controversies to the arbitrator, as in this case, all issues are to be determined by the appointed arbitrator.  *Rent-A-Center,* — S. Ct. —, 2010 WL 2471058.  Thus, whether class arbitration is permitted under the arbitration clause is determined by the arbitrator in the "clause construction award phase" under AAA Supplementary Rule 3. The definition, scope, and certification of any potential class is determined by the "class determination award phase" under AAA Supplementary Rules 4 and 5.  Once the arbitrator decides each issue, the arbitrator's decision is subject to appeal and review by a court pursuant to AAA Supplementary Rules. This is consistent with *Bazzle, Howsam, Stolt-Nielsen,* and *Rent-a-Center*. *Matters of arbitration procedure are issues for the arbitrator*.  As the Supreme Court said in *Howsam*, "parties to an

10

arbitration contract would normally expect a forum-based decision maker to decide forum-specific procedural gateway matters." *Howsam,* 537 U.S. at 86. Class treatment is precisely one of the "procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." *Id.* at 84.

Class action treatment is procedural by definition. That is how class actions are handled in federal court, as a procedural matter to be determined under Federal Rule of Civil Procedure 23. When the parties do not dispute that they have agreed to arbitrate, and when they have agreed to assign all controversies to the arbitrator, then procedural gateway matters such as class treatment are to be determined by the arbitrator.

**B.     THE CLASS ARBITRATION MUST PROCEED**

    **1.     <u>The Parties Agreed to Class Arbitration</u>**

Plaintiff misinterprets *Stolt-Nielsen.* The *Stolt-Nielsen* Court reasoned that, if an arbitration panel compels class arbitration without any evidence of a contractual basis for such a conclusion, and instead bases its decision on what it believes constitutes "sound policy," the panel will have exceeded its powers. The Court also relied on a unique fact pattern, including the key fact that the contracting parties, sophisticated parties to a negotiated admiralty contract, stipulated that the parties had no intent to agree to class arbitration. They thus termed the agreement "silent." This fact led the Court to determine that the arbitration panel had "no room for an inquiry regarding the parties' intent" and therefore "imposed [their] own policy choice and thus exceeded its powers." *Stolt-Nielsen*, 130 S. Ct. at 1767. As such, the Court's decision in *Stolt-Nielsen* was narrowly tailored, left unaffected the treatment of consumer adhesion contracts like the one at issue, and importantly, left undisturbed several key precedents, the most important of which is the Court's decision in *Bazzle*.

Plaintiff and Defendants in this case agreed to class arbitration. There are many contractual bases for concluding that the parties agreed to class arbitration. These include: (1) the plain meaning of the text of the

arbitration clause; (2) Plaintiff's exclusions of certain disputes, but not class disputes; and (3) custom and usage in the consumer context per the *Stolt-Nielsen* analysis.

The plain meaning of the arbitration clause does not, as Plaintiff alleges, "clear[ly] and indisputab[ly]" eliminate agreement to class arbitration. If this was the case, Plaintiff, having been aware of class arbitrations at the time it drafted the parties' agreement, could have excluded class claims. Plaintiff did not do so. Rather, Plaintiff included a broad, generally applied clause - precisely the type of clause that the AAA developed the Supplementary Rules to interpret. "Any controversy, claim or counterclaim ... arising out of or in connection with this Order, whether based on contract, tort, statute or other legal theory ... will be resolved by binding arbitration under this section and the then-current Commercial Rules and supervision of the [AAA]." Arbitration clauses with precisely this "*any controversy*" construction have been repeatedly upheld to represent agreement to class arbitration. Fensterstock Aff. at ¶ 11, Ex. J. To assist the Court, Defendants' Counsel has compiled a representative set of arbitrations before the AAA in which an "*any dispute*" construction was held to permit class arbitration. *Id*. The rationale of these decisions is supported by Justice Ginsburg, citing case law and asking rhetorically: "Why should the class-action prospect vanish when the 'any dispute' clause is contained in an arbitration agreement? *Cf. Connecticut General Life Ins. Co. v. Sun Life Assurance Co. of Canada*, 210 F. 3d 771, 774–776 (CA7 2000) (reading contract's authorization to arbitrate "[a]ny dispute" to permit con-solidation of arbitrations)." *Stolt-Nielsen,* 130 S. Ct. at 1783.

In *Stolt-Nielsen*, the Supreme Court held that there was no agreement about class arbitration in part because of the custom and usage in anti-trust claims in the maritime context. The majority found convincing the evidence that arbitrations in admiralty do not traditionally permit class arbitrations in their "custom and usage." In contrast, here, in the consumer context, class actions are the standard and make practical sense. Plaintiff drafted its adhesion contract to its procedural advantage, eliminating Defendants' recourse to the courts and requiring that all disputes (with few specified exceptions) be arbitrated. In cases like these,

12

consumer plaintiffs have small claims that, on an individual basis, are worth much less than the cost to litigate or arbitrate. Without class treatment, businesses would be permitted to engage in unchecked market misbehavior, harming consumers and the public at large.

The scope of the parties' arbitration agreement in this case leaves little doubt, when read in conjunction with the AAA Policy and Supplementary Rules, that the AAA may properly administer this matter. The agreement provides that "any" controversy or claim must be resolved through binding arbitration, *to be administered by the AAA under the "then-current Commercial Rules."* The AAA Commercial Rules, since October 8, 2003, have incorporated the Supplementary Rules, which, in turn, govern class arbitration. By drafting the arbitration agreement so that it mandated that the parties would proceed under the "then-current" Commercial Rules, Plaintiff agreed to be bound by whatever Commercial Rules existed at the time the dispute was brought before the AAA. As such, the parties' sole recourse to address any dispute under the arbitration agreement is to submit any controversies or claims, including claims for class arbitration, to the AAA, which then administers the case in accordance with the Commercial and Supplementary Rules. This is precisely the manner in which the AAA has proceeded in administrating this matter.

In the years following *Bazzle*, and in the face of the AAA's Policy and Supplementary Rules concerning class arbitrations, Plaintiff easily could have amended the arbitration agreement to specifically bar class arbitration. It did not. Plaintiff's failure to exclude class arbitration, without any explanation, is even more glaring when considering that Plaintiff did specifically *preclude* certain issues from going to arbitration. Plaintiff excluded from arbitration:

> claims and controversies involving either (a) violation of any proprietary rights of LN, including claims in equity or law to protect the intellectual property rights of LN or its third party content providers; or (b) failure to comply with restrictions on the use of the services and materials included in this Order.

*See* Fensterstock Aff. at ¶ 3, Ex. B. Plaintiff knew how to exclude issues and types of cases from the parties' arbitration clause, yet chose not to exclude class arbitration. Having failed to include any such prohibition on

class arbitration in the parties' agreement, when it had an opportunity to do so and was on notice of the AAA's rules and the Supreme Court's decision in *Bazzle*, Plaintiff either did not intend to bar class arbitration, knowingly waived its right to do so, or consented to class arbitration.

*Stolt-Nielsen* cannot rescue Plaintiff's argument that the AAA lacks jurisdiction, or that the parties' arbitration agreement bars class arbitration. Plaintiff fails to recognize that the arbitration agreement in *Stolt-Nielsen*, unlike the clause in this case, *pre-dated* the *Bazzle* decision and so the contracting parties there did not have the benefit of *Bazzle*, the AAA Policy, or the Supplementary Rules prior to drafting their arbitration agreement. After *Bazzle*, the playing field had changed and class arbitration became a foreseeable reality. Another factor distinguishing *Stolt-Nielsen* from the case at bar is that the parties in *Stolt-Nielsen* were involved in arms-length contract negotiations, unlike the parties in the instant arbitration. Here, Plaintiff drafted take-it-or-leave-it adhesion contracts, including the arbitration provision, and offered it to consumers. Further, the parties in *Stolt-Nielsen* later stipulated, prior to the arbitration hearing, that the arbitration clause was "silent" as to class arbitration, and that this "silence" meant that the parties had no intent whatsoever with regard to class arbitration. These facts demonstrate that, as a matter of basic contract interpretation, it was outside the reasonable expectation of the parties in *Stolt-Nielsen* that class arbitration was contemplated by the arbitration agreement.

Plaintiff's argument that *Stolt-Nielsen* imposes an obligation on parties to affirmatively express their consent to class arbitration is equally of no avail. *Stolt-Nielsen* contains no such limitation. *Stolt-Nielsen* does not require the parties' express consent to class arbitration. Justice Ginsburg, in her dissent, says as much: "the Court does not insist on express consent to class arbitration. Class Arbitration may be ordered if 'there is a contractual basis for concluding that the part[ies] *agreed*' 'to submit to class arbitration.'" *Id*. at 1783 (emphasis in original). This is an issue to be determined by the arbitrator.

14

2.    **The Arbitration Agreement Is Not "Silent" On Class Arbitration**

The *Stolt-Nielsen* Court relied heavily on the fact that the parties stipulated to "silence" to conclude that the parties had no contractual basis for class arbitration. There is no "silence" in this case. Plaintiff itself drafted the arbitration clause which expressly incorporated the AAA's class action rules, thus foreseeing class arbitration of the very matters at issue here.

In contrast to this case, *Stolt-Nielsen*'s "silence" was a stipulated-to "silence of intent." The Supreme Court held that this stipulated "silence of intent" meant that the arbitration panel had "no room for an inquiry regarding the parties' intent" and therefore had, in effect, "dispensed [their] own brand of industrial justice" and "imposed its own policy choice and thus exceeded its powers." *Id.* at 7. There is no stipulated-to "silence of intent" here. The agreement demonstrates that Plaintiff and Defendants intended to agree to class arbitration. Had Plaintiff desired to exclude class arbitration, it should have inserted such a prohibition into its agreement and not incorporated the AAA's class action rules. Since Plaintiff did not do so, and Defendants did not have any power or opportunity to do so, it would be unjust to construe the agreement in the manner Plaintiff proposes.[8]

3.    **The AAA's Confidentiality Rules Do Not Undermine the AAA's Supplementary Rules on Class Arbitration**

Plaintiff argues that the AAA's Confidentiality Rules are irreconcilable with its Supplementary Rules on Class Arbitration. This is incorrect, as reflected in the AAA Policy on Class Arbitrations dated July 14, 2005 ("AAA Policy"), and the Court's decision in *Stolt-Nielsen*. Plaintiff ignores the language of the AAA Policy which states that:

---

[8]    Indeed, Justice Ginsburg, in her dissent in *Stolt-Nielsen*, reaches the same conclusion, stating, "the Court apparently spares from its affirmative-authorization requirement contracts of adhesion presented on a take-it-or-leave-it basis." *Stolt-Nielsen,* 130 S. Ct. at 1783. This conclusion makes sense, as adhesion contracts typically present the weaker party with no opportunity to express intent, and, as stated by the majority in *Stolt-Nielsen*, "Courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Id.* at 1775.

> the [AAA] will administer demands for class arbitration pursuant to its Supplementary Rules for Class Arbitrations if (1) the underlying agreement specifies that disputes arising out of the parties' agreement shall be resolved by arbitration in accordance with any of the Association's rules, and (2) the agreement is silent with respect to class claims, consolidation or joinder of claims.

The AAA's Supplementary Rules referenced above in the AAA Policy, provide that:

> These Supplementary Rules for Class Arbitrations ("Supplementary Rules") shall apply to any dispute arising out of an agreement that provides for arbitration pursuant to *any of the rules* of the American Arbitration Association ("AAA") where a party submits a dispute to arbitration on behalf of or against a class or purported class*, and shall supplement any other applicable AAA rules*. These Supplementary Rules shall also apply whenever a court refers a matter pleaded as a class action to the AAA for administration, or when a party to a pending AAA arbitration asserts new claims on behalf of or against a class or purported class. (Emphasis added)

Plaintiff also misconstrues the AAA's Rules to suggest that if class arbitration proceeds, it will be irreparably harmed because of a purported "loss of confidentiality." Plaintiff submits that the parties' agreement to keep arbitrations confidential runs counter to the terms of the AAA's Supplementary Rules, which state in pertinent part that "[t]he presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations." *See* Supplementary Rules, Rule 9(a). However, Plaintiff misunderstands how the parties' arbitration agreement and the Supplementary Rules interrelate. Plaintiff offers a faulty juxtaposition of clauses, insinuating that the parties' agreement to keep arbitrations confidential runs counter to the terms of the Supplementary Rules, which state in pertinent part that "[t]he presumption of privacy and confidentiality in arbitration proceedings shall not apply in class arbitrations." *See* Supplementary Rules, Rule 9(a). Underlying Plaintiff's analysis is a misunderstanding of how these two clauses interrelate. The denial of an inherent presumption of confidentiality does not bar, outright, confidentiality in a class arbitration, provided there are legitimate and compelling reasons for seeking such protection: Supplementary Rule 9(a) provides that "class arbitration hearings and filings *may* be made public, *subject to the authority of the arbitrator to provide otherwise*. . ." (Emphasis added). Had Supplementary Rule 9(a) been drafted with the

16

intention of barring confidentiality from class arbitrations altogether, this provision would not have used such permissive language, or provided the arbitrator with the discretion to curtail what is made public in class arbitrations. The use of the word "may" in this provision, as well as the discretion which is afforded to an arbitrator to deem hearings and filings confidential, demonstrates that the publicity of class arbitration is permissive, not compulsory. Looking at these two provisions of Supplementary Rule 9(a) together, it is clear that while there is no "presumption" of confidentiality in class arbitrations, this presumption, like all presumptions, may be overcome, with a sufficient showing that confidentiality is necessary. As a result, it is untrue that the confidentiality provision is inconsistent with the AAA's class action procedures. Plaintiff is free to petition the arbitrator for relief on confidentiality at any point. As a result, it is incorrect to argue that the AAA cannot reconcile its own Rules and therefore cannot function. Indeed, the AAA's class action procedures provide adequate protection to parties in class arbitration.

Arbitration tribunals have addressed, and rejected, the very same arguments Plaintiff makes in its motion with respect to a confidentiality provision in an arbitration agreement being anathema to class arbitration. For example, in *Terrapin Express, Inc., et al. v. Airborne Express, Inc., et al.*, AAA Case No. 111990153605, the parties' arbitration clause contained a confidentiality provision similar to the one here.[9] Plaintiff in *Terrapin Express* argued, just as Plaintiff does here, that the confidentiality provisions in the relevant agreements were at odds with Supplementary Rule 9(a) and that, as a result, the matter was prohibited from proceeding as a class arbitration. The arbitration panel rejected this argument concluding, among other things, that because Plaintiff drafted the agreements – as Plaintiff did here – "to the extent that the real intention of the confidentiality provisions of the [Agreements] was to prohibit class arbitration, Plaintiff could

---

[9] The clause stated in relevant part "[i]n order to facilitate the resolution of controversies or claims between the parties with respect to each party hereto, such controversies or claims, including details regarding negotiations, arbitration, and settlement terms, shall be treated as Confidential Information of each party hereto..." *Terrapin Express, Inc., et al. v. Airborne Express, Inc., et al.*, AAA Case No. 111990153605 (included in Fensterstock Aff. ¶ 11, Ex. J)

have easily said so explicitly. If anything, their failure to do so signifies the opposite, *i.e.*, that the intention

of the parties was to permit class arbitration." *Terrapin Express,* at 6. Further, the panel found that the issue

of confidentiality was not an issue of "contract construction bearing on the question of whether the relevant

arbitration clauses permit Defendants to proceed in the matter on behalf of a class. Rather, they are

management issues which are not relevant to a clause construction analysis." *Id*. The panel also reasoned, as

Defendants do here, that a tribunal can manage confidentiality concerns.[10] There is no reason to assume that

the arbitrator in this matter cannot craft adequate safeguards to protect Plaintiff's confidentiality concerns, or

that the parties cannot enter into a reasonable confidentiality stipulation approved by the arbitrator.[11]

Plaintiff also argues that class arbitration, should it go forward, would encompass parties who are not

parties to the arbitration agreement. This argument is entirely premature. Plaintiff fails to recognize that the

only issue decided at the clause construction phase, is whether the arbitration clause permits the case to

proceed as a class arbitration. Should the arbitrator determine that this matter can proceed as a class

arbitration, then the arbitration moves ahead to the class determination phase, pursuant to Supplementary

Rule 5, where the arbitrator will determine, in an analogous fashion to a court's determination under Federal

Rule of Civil Procedure 23, whether the prerequisites for a class have been met and how the class shall be

defined. As Plaintiff's Counsel well know from having previously represented parties in class arbitrations, the

---

[10]     The panel stated "readily manage a possible class arbitration to avoid violation of the confidentially provisions" and that "Supplementary Rule 9(a) does not state that there is no privacy and confidentiality on class arbitration proceedings [but that] the presumption of privacy and confidentiality shall not apply. The Tribunal may require certain rules of confidentiality based upon provisions in the [parties' agreements]." *Id*. at 7. The panel also correctly noted that confidentiality stipulations in arbitrations, as in litigation proceedings, "may contain all appropriate safeguards to avoid public disclosure of confidential pricing and other information." *Id*. at 8. This is precisely what Defendants have argued for before the AAA in this arbitration. Fensterstock Aff. at ¶ 5, Exhibit D.

[11]     Plaintiff's argument regarding confidentiality also fails because there is no imminent risk, whatsoever, of confidential information being released. The substantive issues regarding Plaintiff's improper billing and invoicing, as well as the failings of Plaintiff's electronic research service software to warn customers when they have ventured outside of their plans, is months away and will not be relevant to these proceedings until long after the clause construction phase has concluded, and such information can be protected from disclosure, if warranted, by the arbitrator.

time frame for reaching a clause construction award, from the time a Demand for Arbitration is filed, can be many months, if not years. *See* Fensterstock Aff. at ¶ 6, Ex. E. Further, contrary to Plaintiff's argument, the fact that not all parties may be subject to the arbitration agreement does not support summary judgment that Defendants are precluded from class arbitration. In fact, to the contrary *Stolt-Nielsen* explicitly states that "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Stolt-Nielsen*, 130 S. Ct. at 1774 (quoting *Moses v. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983)).

###    4.    The Contracts Between The Parties Are Classic Adhesion Contracts

The contracts between the parties are classic adhesion contracts. *See Raasch v. NCR Corp.*, 254 F. Supp. 2d 847 (S.D. Ohio 2003). ("Contracts of adhesion are . . . contracts drafted by one party without regard to the concerns of the other party; they are created without meaningful negotiations.") This fact will be vital to any application of *Stolt-Nielsen,* whether by this Court or the arbitrator. Surprisingly, Plaintiff disputes that these are adhesion contracts, noting that consumer Defendants are lawyers and citing out-of-context the use of the word "negotiate"[12] in the Defendants' Amended Arbitration Demand to refer to the Defendants' purchase of the LN services.

Plaintiff drafted the agreements containing the arbitration clause, as well as the arbitration clause itself, and presented it to Defendants (and innumerable other consumers) on a take-it-or-leave-it basis.[13] Defendants had no input in drafting the agreement. Plaintiff could pick and choose at will any terms that it wanted, and Defendants could not add, subtract, or modify these terms. Plaintiff's internet research service contracts are

---

[12]    As is typical in the offering of high-tech services, Plaintiff presented Defendants with a limited menu of tiered subscription options at set prices. Defendants could select from amongst these options. The word "negotiate," in the Amended Arbitration Demand was not a signal that Plaintiff and Defendants engaged in arms-length negotiations over the wording of the contract. The use of the term simply conveyed the fact that Defendants and other consumers chose from a menu offered on a take-it-or-leave-it basis, and then signed the adhesion contracts as presented.

[13]    In *Raasch,* 254 F. Supp.2d 847, this Court specifically cited those agreements, which state "in standardized, pre-printed, take-it-or-leave-it terms, drafted without any dickering" as contracts of adhesion.

just like mobile phone contracts, or internet service provider contracts, two other examples of adhesion contracts. It does not matter if a consumer is a lawyer, federal judge, or arbitrator, if he or she wants an AT&T mobile phone, he or she must sign the adhesion contract. It is the same situation here.

Here, Plaintiff drafted an adhesion contract and presented it to Defendants. Plaintiff drafted it with its own interests in mind. But now it asks the Court to take another leap on its behalf, and hold that consumers everywhere that are subject to arbitration agreements are "precluded from having any claim arbitrated on anything other than an individual basis." *In re American Express.*, 554 F.3d 300(holding this unconscionable).

### 5.  Without Class Arbitration, Defendants Have No Practical Recourse

The logic of class treatment is familiar and was affirmed in *Stolt-Nielsen* by Justice Ginsburg: "When adjudication is costly and individual claims are no more than modest in size, class proceedings may be "the thing," i.e., without them, potential claimants will have little, if any, incentive to seek vindication of their rights. *Amchem Products, Inc. v. Windsor*, 521 U. S. 591, 617 (1997); *Carnegie v. Household Int'l, Inc.*, 376 F. 3d 656, 661 (CA7 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.")." *Stolt-Nielsen,* 130 S. Ct. at 1783. By seeking summary judgment, Plaintiff seeks from this Court a radical amnesty for its wrongdoings against those consumers who have entered binding arbitration agreements and are then forced out of courts and into individual arbitrations on their modest claims. *Bazzle, Stolt-Nielsen, Rent-a-Center,* and *Howsam* require no such intended or unintended consequence.

## IV.  CONCLUSION

Plaintiff has not met the heavy burden required by law to secure summary judgment on its claim for declaratory relief.  Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment On Its First Claim For Declaratory Relief.

Dated: New York, New York
       July 23, 2010

<div style="margin-left:40%;">

FENSTERSTOCK & PARTNERS LLP

By:    _____
       Blair C. Fensterstock (*pro hac vice*)
       Eugene D. Kublanovsky (*pro hac vice*)

       30 Wall Street, 9th Floor
       New York, New York 10005
       (212) 785-4100

       FRANTZ WARD LLP
       Patrick F. Haggerty (0019703)
       Lindsey A. Carr-Siegler (0074182)
       2500 Key Center
       127 Public Square
       Cleveland, Ohio 44114
       (216) 515-1660

       *Attorneys for Defendants*

</div>