IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

REED ELSEVIER, INC., through its       :
LEXISNEXIS Division,
                                       :
            Plaintiff,
                                       :
    vs.                                :     Case No. 3:10cv248

                                       :     JUDGE WALTER HERBERT RICE
CRAIG M. CROCKETT, etc., et al.,
                                       :
            Defendants.

---

DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO
DISMISS FOR LACK OF JURISDICTION (DOC. #20)

---

This action concerns arbitration proceedings that are presently pending
between the Plaintiff and Defendants, and which are scheduled to be conducted in
Dayton, Ohio. The Plaintiff has brought a suit for declaratory relief in this Court,
seeking a declaration that said arbitration cannot proceed on a class-wide basis.
The Defendants have filed a Motion to Dismiss for Lack of Personal Jurisdiction
(Doc. #20). As a means of analysis, the Court initially sets out the factual and
procedural background of this case, before moving to the parties' arguments for
and against the pending motion.


I. Factual and Procedural Background

    Craig M. Crockett is the assignee and former partner in the law firm DeHart

-1-

Crockett, P.C., and the sole member of Craig M. Crockett, P.C., d/b/a The Crockett Firm.  For ease of reference, this Court will subsequently refer to the Defendants as "Defendant" or "Crockett."  Crockett utilizes certain legal research services in his work, accessing them from his computer over the internet.  Plaintiff Reed Elsevier, through its LexisNexis division ("Plaintiff" or "LexisNexis") is a corporation that provides such legal research services.  For a fee, LexisNexis subscribers are able to search for and access court decisions, statutes, law review articles, practitioner manuals, stories from newspapers and periodicals, and other sources. LexisNexis offers different plans at different price points, depending on the needs of the user.  While users have the option of purchasing access to all of the research services and databases offered, many opt for more limited plans at a lower price, geared toward their particular research needs.  For example, an Ohio lawyer might purchase unlimited access to all Ohio state court decisions, but choose not to purchase the same unlimited access to the court decisions of other states.  This user could still access out of state decisions, but because those materials would be "outside" her plan, she would incur additional charges each time she did so.  The controversy between Crockett and LexisNexis involves such a scenario.

An intricate recounting of the elements in the dispute that Crockett wishes to arbitrate are immaterial to the personal jurisdiction issue presented here.  For present purposes, it is sufficient to state the following: Crockett had a LexisNexis plan which gave him unlimited access to certain of Plaintiff's databases, including some focused on the laws of Texas, where his practice was located.  Doc. #7-1

Ex. 5 at ¶¶ 4, 5 (Affidavit of Charles Faruki). While utilizing his subscription to the LexisNexis database, Crockett browsed "outside" his plan on a number of occasions, and incurred additional charges. Id. at ¶ 4. Crockett contends that the terms of his plan required that he be put on notice, by being warned with "pop-up" dialogue boxes when he was about to begin browsing "outside" his plan, and thus, incurring those additional charges. Id. at ¶¶ 25-30. Crockett asserts that he received no such warnings, and that LexisNexis breached its agreement with him as a result. He wishes to arbitrate his claim.

The contract between Plaintiff and Defendants included an arbitration clause that provides, in relevant part, as follows:

> any controversy, claim or counterclaim (whether characterized as permissive or compulsory), arising out of or in connection with this Order (including any amendment or addenda thereto), whether based on contract, tort, statute or other legal theory (including but not limited to any claim of fraud or misrepresentation) will be resolved by binding arbitration under this section and the then-current Commercial Rules and supervision of the American Arbitration Association ('AAA'). The duty to arbitrate will extend to any employee, officer, agent or affiliate of either party. *The Arbitration will be held in the United States headquarters city of the party not initiating the claim except all claims initiated by [LexisNexis] for non-payment will be held in Dayton, Ohio*.

Doc. #1 at 7 (emphasis added). Although Crockett initially sought to pursue arbitration against LexisNexis in New York, the American Arbitration Association ("AAA"), relying on the forum selection clause above, as well as the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq, concluded that the parties had properly agreed to conduct arbitration in Dayton, Ohio, if Crockett were the one to initiate arbitration. Doc. #7 Ex. 10 (Letter from the AAA determining that

arbitration would be conducted in Dayton). In accordance with the AAA's decision, Crockett has continued to press for arbitration to move forward in Dayton. Throughout the preliminary stages of arbitration, Crockett indicated that he desired to pursue class-based arbitration, acting as a representative for other LexisNexis users who may have incurred additional charges for browsing "outside" their plans, under similar circumstances. LexisNexis objected that its agreement with Crockett did *not* authorize class-arbitration. Nevertheless, the AAA indicated that it would proceed with class-based arbitration, pursuant to Crockett's request. Id.

LexisNexis brought suit in this Court, seeking a declaratory judgment in accordance with 28 U.S.C. §§ 2201, 2202, to the effect that Crockett is not permitted to pursue his claims in arbitration before the AAA on behalf of any putative class, nor to act as a class representative for other users who may have incurred additional charges for browsing "outside" their LexisNexis subscriptions. Doc. #1 at 10–12 (Plaintiff's Complaint). Crockett has now filed a motion to dismiss,[1] asserting that he has no contacts with Ohio and is not subject to personal jurisdiction in this forum. LexisNexis counters that Crockett has, in effect, consented to the jurisdiction of this Court by agreeing to conduct arbitration in Dayton, and by actively pursuing arbitration therein. Additionally, LexisNexis argues that Crockett is subject to personal jurisdiction under traditional tests involving his establishment of "minimum contacts" with Ohio.

---

[1]Presumably, given its subject matter, Crockett's motion is brought pursuant to Fed. R. Civ. P. 12(b)(2), although Crockett does not indicate as such in his motion or supporting memoranda.

As a means of analysis, the Court initially sets out the standard for personal jurisdiction, before addressing the parties' arguments for and against the two bases upon which LexisNexis asserts that Crockett is subject to personal jurisdiction in this forum.

II. Personal Jurisdiction

When confronted with a motion to dismiss for lack of personal jurisdiction, the plaintiff has the burden to demonstrate the existence of such jurisdiction over a defendant. Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). Where, as here, the district court addresses the issue before initiating discovery and without an evidentiary hearing, the plaintiff need not carry the full weight of its ultimate burden to demonstrate personal jurisdiction by a preponderance of the evidence, Air Prods. & Controls, Inc. v. SafeTech Int'l, Inc., 503 F.3d 544, 549 (6th Cir. 2007); rather, at this preliminary stage, the plaintiff must discharge only the "relatively slight" burden of presenting "a prima facie showing that personal jurisdiction exists in order to defeat dismissal," Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1169 (6th Cir. 1988); Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991). Further, "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh the controverting assertions of the party seeking dismissal." Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 360-61 (6th Cir. 2008) (citation omitted). A plaintiff meets this prima facie burden by "set[ting] forth specific facts that support a finding of jurisdiction." Kroger Co.

v. Malease Foods Corp., 437 F.3d 506, 510 (6th Cir. 2006); Neogen Corp. v. Neo

Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (noting that a plaintiff can

meet this burden by "establishing with reasonable particularity sufficient contacts

between [the defendant] and the forum state to support jurisdiction") (citing

Provident Nat'l Bank v. California Fed. Savings Loan Ass'n, 819 F.2d 434, 437

(3d Cir. 1987)).

The assertion that a defendant is within the Court's jurisdictional reach must

be tested against both state and federal law.  An exercise of jurisdiction must

offend neither the forum state's long-arm statute nor the due process protections

of the Fourteenth Amendment to the United States Constitution.  Nationwide Mut.

Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 793 (6th Cir. 1996).  The Sixth Circuit

stresses that the "central inquiry" in these cases is whether a defendant has

established certain minimum contacts with Ohio so that this Court's exercise of

jurisdiction "do[es] not offend 'traditional notions of fair play and substantial

justice.'" Cole v. Mileti, 133 F.3d 433, 436 (6th Cir. 1998) (quoting Int'l Shoe Co.

v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be general or specific, but only the latter basis is

argued herein.  Unlike general jurisdiction, rendering a Defendant amenable to suit

in any lawsuit brought against it in the forum state, based on Defendant's

continuous and systematic conduct within that state, even if the action is unrelated

to the Defendant's contact with the state, Estate of Dorothy Thompson, etc. v.

Toyota Motor Corporation World-wide, 545 F.3d 357 (6th Cir. 2008, citing Third

National Bank in Nashville v. Wedge Group, Inc., 882 F.2d 1087, 1089

(6th Cir. 1989)), specific jurisdiction is predicated upon a defendant's particular contacts with a forum which are directly related to the litigation issues under scrutiny. Third Nat'l Bank v. Wedge Group, Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). The Sixth Circuit employs a three part test for assessing whether a court has specific jurisdiction over a defendant, to wit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Machine Co. v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968). The first prong of this inquiry, purposeful availment, is often described as the "sine qua non for in personam jurisdiction." Id. at 381-82; see also Ohio's Long Arm Statute, Ohio Revised Code §2307.382.

Finally, it is also well-established that a defendant may consent to personal jurisdiction in a particular forum, either explicitly, by declining to raise a jurisdictional objection, or implicitly through its actions and course of dealings. E.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985). Obviously, Defendant has raised an objection to this Court's in personam jurisdiction. Accordingly, the Court's inquiry is limited to whether Defendant has implicitly consented to jurisdiction over his person in this District, in any or all types of litigation.

A. Implicit Consent to Personal Jurisdiction

The Plaintiff's primary argument is that by accepting the arbitration agreement, which, for present purposes, requires that arbitration be conducted in Dayton, Crockett has consented to personal jurisdiction in this Court over him on matters regarding the enforcement of the arbitration clause in question.    Plaintiff has not argued that an agreement as to the locus of an arbitration confers implicit consent to in personam jurisdiction over it for any remedies sought, outside the arbitration provisions in question, arising out of the contractual or other relationship between the parties.  Specifically, Plaintiff has not argued that consent to arbitration in the Southern District of Ohio gives a federal district court, sitting within that District, personal jurisdiction over the Defendant to vindicate any remedies sought by Plaintiff other than those arising out of the agreement to arbitrate.  Indeed, none of the cases cited and commented upon by Plaintiff demonstrates a broadening of its position to contend that the arbitration clause, fixing the site of the arbitration, conveys implicit consent to personal jurisdiction on matters beyond the interpretation, scope and enforcement of the arbitration agreement.

As the Supreme Court has remarked "on numerous occasions … the 'primary' purpose of the [Federal Arbitration Act ("FAA")] is to ensure that private agreements to arbitrate are enforced according to their terms." Stold-Nielsen S.A. v. Animal Feeds International Corp., __ U.S. __, 130 S. Ct. 1758, 1773 (2010) (citing Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).  LexisNexis cites Victory Transp. v.

Comisaria Gen. de Adastecimientos y Transportes, 336 F.2d 354 (2d Cir. 1964),

for the proposition that a party to a contractual arbitration agreement implicitly

consents to personal jurisdiction in the location where the arbitration is to be

conducted. Doc. #35 at 5. Therein, the Second Circuit held that:

> By agreeing to arbitrate in [a state], where the [Federal Arbitration Act]
> makes such agreements specifically enforceable, [that party] must be
> deemed to have consented to the jurisdiction of the court that could compel
> the arbitration proceeding in that state. To hold otherwise would be to
> render the arbitration clause a nullity.

Id. at 363. A variety of courts have held, similarly, that consent to personal

jurisdiction in a locality accompanies a contractual agreement to arbitrate there,

see Partners, L.L.C. v. Emerson, 248 F.3d 720, 725 (8th Cir. 2001); Doctor's

Assocs. Inc. v. Stuart, 85 F.3d 975, 983 (2d. Cir. 1996); Edward E. Gillen Co. v.

Hammond Port Auth., 1998 U.S. Dist. LEXIS 20276 at *3 (N.D. Ill. 1998). Further

explaining the rationale for inferring consent to personal jurisdiction, the Eighth

Circuit has commented that

> if the court in the selected forum [of an arbitration agreement] did not have
> personal jurisdiction to compel arbitration, the agreement to arbitrate would
> be effectively unenforceable, contrary to the strong national policy in favor
> of arbitration.

St. Paul Fire & Marine Ins. Co. v. Courtney Enters., 270 F.3d 621, 624 (8th Cir.

2001). This reasoning is reinforced given that "when the agreement to arbitrate

includes a forum selection clause, most courts have concluded that 'only a district

court in that forum has jurisdiction to compel arbitration pursuant to Section 4 [of

the Federal Arbitration Act].'" Id. (quoting Management Recruiters Int'l v. Bloor,

129 F.3d 851, 854 (6th Cir. 1997)) (brackets in original). The Supreme Court has

also commented with approval on the trend in the appellate courts to recognize locality clauses in arbitration agreements as a form of consent to personal jurisdiction. Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 704 (1982) (noting that "lower federal courts have found such consent [to personal jurisdiction] implicit in agreements to arbitrate," among other methods by which a party may voluntarily submit to jurisdiction).

Defendant's primary argument is that "arbitration and litigation [presumably in the broad sense] are not one in the same, and it *cannot* be said that *consent to locale* [sic] *for a hearing* in one amounts to *consent to jurisdiction in the other*." Doc. #36 at 6 (emphasis in original). Regarding the cases cited by Plaintiff, Crockett argues that they stand for a limited proposition that is not applicable in the present circumstances, to wit: that a district court may obtain personal jurisdiction over a recalcitrant defendant that has entered into an arbitration agreement specifying a particular forum, *only* for the purpose of compelling that party to commence arbitration proceedings. For example, Defendant indicates that Victory Transport "stands for the extremely limited proposition that a District Court sitting in the district where an arbitration hearing is to be held has *in personam* jurisdiction to *enter an order compelling arbitration*, where a *foreign corporation* agrees to arbitrate in the forum state." Id. at 4 (emphasis in original). Crockett reiterates this argument throughout, referencing the other cases cited by Plaintiff such as St. Paul Fire & Marine Ins. Co., supra, which also dealt with a situation in which a party sought to compel arbitration. Because the aim of Plaintiff's suit (a declaratory judgment that Defendant is not entitled to class-wide arbitration) is not

to compel Crockett to arbitrate, Defendant argues, the line of cases upon which Plaintiff relies is inapplicable.

Crockett's contention that litigation and arbitration are "not one and the same" is misleading, in the context of this case, and in the light of the relief sought by Plaintiff. The most natural reading of Crockett's argument suggests that he believes a party may agree to arbitrate a dispute in a location, without implicitly agreeing to conduct, for example, a jury or bench trial on the same or related issues in that location. If that is Defendant's contention, while hardly controversial, it is one the Court need not resolve, as its applicability or relevance in this context is dubious, given that Plaintiff's suit is for the limited purpose of obtaining a declaratory judgment concerning how the parties' arbitration will proceed, i.e., whether the arbitration will proceed on Crockett's individual claims or, in the alternative, whether on his claims as representative of a class. While some courts have made rulings on personal jurisdiction issues that seemingly validate Crockett's argument, when the facts on which those decisions are based are considered in context, it is clear that they have referred to "litigation" in a different sense than it would apply here. The case of <u>United Financial Mortgage Corp. v. Bayshores Funding</u>, 245 F. Supp. 2d 884 (N.D. Ill. 2002), is illustrative.

Therein, the plaintiff, an Illinois corporation engaged in mortgage brokering and loan origination, sued various defendant companies and individuals, all of whom were based in California, on several theories of financial fraud and originating false loan documents. <u>Id</u>. at 889–91. The plaintiff's suit was brought in federal court in Chicago, despite the fact that all of the alleged wrongful acts had taken place in California by entities with few contacts to Illinois. The plaintiff

asserted that the defendants had consented to personal jurisdiction in Illinois, because an arbitration clause specified Oak Brook, Illinois, as the site for any arbitration between and among the parties. Id. However, because no arbitration proceedings had ever taken place, the district court rejected this argument, writing: "In this instance the clause only pertains to the *arbitration* of disputes between Bayshores and United Financial; it does not address a forum for *litigation*." Id. at 893 (emphasis added). Accordingly, the court refused to hold "that the defendant had consented to jurisdiction to litigate in a particular forum based solely on the parties' agreement to arbitrate in that forum." Id. Under similar circumstances, another court held that an "arbitration clause suggesting arbitration could be held in California is insufficient to establish personal jurisdiction over Defendant in this state." Weinberg & Co. v. Beasley Food Service, Inc., 2008 U.S. Dist. LEXIS 84461 at *11 (C.D. Cal. 2008).

Unlike the present situation, wherein an arbitration has been commenced in the locale specified in the arbitration agreement, and where Plaintiff's lawsuit seeks only declaratory relief, as opposed to monetary and/or equitable remedies, solely on matters regarding the scope and enforcement of that agreement, the preceding cases dealt with situations in which no arbitration had been initiated, and in which the lawsuit that triggered the personal jurisdiction issues sought to recover monetarily, on the substantive controversy between the parties, rather than to compel, interpret, or determine the scope of arbitration. In Bayshores, the plaintiff's suit aimed to recover from the defendants for their alleged fraud, while invoking the arbitration agreement as a basis for personal jurisdiction. Similarly, the plaintiff in Weinberg filed a suit seeking monetary relief for a breach of contract

-12-

claim. The situation in the instant case is different in two important respects.

First, arbitration between the parties in this suit is not speculative: Crockett has actually initiated arbitration, in Ohio and against LexisNexis. Thus, enforcement of the arbitration agreement to which Plaintiff's personal jurisdiction argument is tethered is not merely a hypothetical possibility. Rather, LexisNexis filed this suit, because Crockett initiated arbitration proceedings in Ohio that it asserts are improperly represented as class-wide proceedings. It seeks a declaratory judgment that such is not justified by the arbitration agreement between the parties.

Second, the subject matter of Plaintiff's suit directly addresses the scope of the already initiated arbitration and nothing more. While some courts, as set forth above, have rejected personal jurisdiction where a dormant arbitration agreement is the primary connection between a defendant and a distant locale, and where the plaintiff seeks substantive relief for a cognizable injury such as fraud or breach of contract, that is not the case herein. LexisNexis has filed suit for a declaratory judgment concerning an arbitration that is currently pending. Accordingly, any analogy between the present case and those that have found a defendant not subject to personal jurisdiction because an agreement to arbitrate in the forum did not imply an agreement to litigate therein is unpersuasive.

A more appropriate analogy can be found in Edward E. Gillen Co. v. Hammond Port Auth., 1998 U.S. Dist. LEXIS 20276 (N.D. Ill. 1998). There, the plaintiff sought only declaratory relief in an Illinois federal court, after the defendant had initiated arbitration proceedings in Chicago. Specifically, the plaintiff requested a declaratory judgment that the claims defendant had submitted to arbitration had been waived as the result of a prior settlement agreement. The defendant moved

to dismiss on personal jurisdiction grounds. The court concluded that it had

personal jurisdiction over the defendant corporation, given that its initiation of

arbitration in Chicago had triggered the suit:

> Hammond protests that this court does not have personal jurisdiction over it because it is an Indiana municipal corporation conducting business wholly within the State of Indiana. However, Hammond's initiation of the allegedly improper arbitration demand prompted Gillen to file its complaint. As this court has previously noted, the relevant act for jurisdictional purposes is the act upon which plaintiff's claim is based. McKnight v. United Airlines, Inc., 1993 U.S. Dist. LEXIS 17607, 1993 WL 524250 at *2 (N.D.Ill. December 10, 1993) (citation omitted). *By instituting an arbitration action in Chicago, Hammond consented to the jurisdiction of this court.* See e.g., Fireman's Fund Ins. Co. v. National Bank of Cooperatives, 103 F.3d 888, 894 (9th Cir. 1996); Doctor's Assocs. Inc. v. Stuart, 85 F.3d 975, 983 (2nd Cir. 1996).

Id. at *3 (emphasis added). The court then went on to resolve the arbitration

dispute, concluding that the defendant's claim was indeed arbitrable. Similarly, in

this case, Crockett has initiated arbitration proceedings in Ohio, which LexisNexis

seeks to limit, by its declaratory judgment action, to individual rather than

class-based claims.

Crockett concedes that courts have personal jurisdiction to compel/enforce

an arbitration agreement against a party that simply refuses to submit to an

arbitration to which it has agreed. Absent an agreed upon "location of arbitration"

clause in the arbitration agreement, such an action to compel may only be filed in a

federal district court having in personam jurisdiction on the underlying dispute.

See 9 U.S.C. § 4. The relevant inquiry must focus on whether personal jurisdiction

over the defendant, at least to the limited scope of arbitration related issues, is

necessary in order for the arbitration agreement to have the force and effect the

parties intended. As the Second Circuit observed, to hold that a party can submit

-14-

to an arbitration agreement that specifies a location for arbitration, but refuse to submit to personal jurisdiction in that forum in a suit to compel arbitration,  "would ... render the arbitration clause a nullity," or, at the very least, make it unduly burdensome to enforce. <u>Victory Transport</u>, 336 F.2d at 363.  In this Court's opinion, such an interpretation of the arbitration clause would render same largely ineffectual in carrying out the FAA's statutory policy of rapid and unobstructed enforcement of arbitration agreements.  Similarly, the agreement between Crockett and LexisNexis was that if Crockett initiated arbitration, he would have to do so in Dayton, where LexisNexis is headquartered.  That provision would be rendered largely ineffectual if LexisNexis could not seek a declaratory judgment, stay, or other ruling concerning the arbitration agreement in that forum, i.e., its interpretation, scope or enforcement, or the arbitration itself.  <u>See</u> <u>id</u>.

Crockett cites only one federal case dealing with jurisdictional or quasi-jurisdictional issues in the context of arbitration, <u>Cortez Byrd Chips v. Bill Harbert Constr. Co.</u>, 529 U.S. 193 (2000).  It is worth remarking, as a preliminary observation, that <u>Cortez Byrd Chips</u> is, at most, persuasive authority in this dispute, because it deals with venue under the FAA, rather than personal jurisdiction.  Nevertheless, the Court believes the reasoning contained therein is instructive, though not for the proposition that Crockett derives.  Rather, by setting forth commonsense principles for the efficient resolution of disputes that intertwine arbitration and court proceedings in different districts, the Supreme Court's decision weighs against Crockett's argument.

<u>Cortez</u> involved a dispute concerning the manufacturing of industrial

equipment in Mississippi. The contract between the parties contained a clause by which they agreed to submit all disputes to binding arbitration. The contract further provided that "the award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." Id. at 195. After a dispute arose, the parties conducted arbitration, which was overseen by the AAA and took place in Birmingham, Alabama. The arbitration resulted in an award in favor of Harbert. Cortez Byrd then filed a complaint seeking to modify or vacate the award in federal court in Mississippi, and, seven days later, Harbert filed an action to confirm the arbitration award in federal court in Birmingham. Sections 10 and 11 of the FAA indicate that, as a matter of venue, a party may file to vacate or modify an arbitration award in "'the United States court in and for the district wherein the award was made.'" Id. (quoting 9 U.S.C. §11). The matter that reached the Supreme Court required the Court to consider whether the venue provisions of the FAA (§§9-11) were restrictive, allowing a motion to confirm, vacate, or modify an arbitration award to be brought *only* in the district in which the arbitration took place and where the award was made, or permissive, permitting such a motion *either* where the arbitration was held and the award was made *or* in any other district that was proper under the general venue statute. Id. at 195. The former conclusion would indicate that the FAA provisions supplant the general venue statute in arbitration cases, necessitating that all suits seeking to vacate or modify an award be filed *only* in the district where arbitration was conducted and an award made, while the latter conclusion would indicate that the venue provisions supplement the general venue statute, and permit a petition to vacate or modify an

-16-

award to be filed in a number of jurisdictions, including the one where arbitration

was conducted and the award made. See id. ("If §§ 10 and 11 are permissive and

thus supplement, but do not supplant, the general provision, Cortez Byrd's motion

to confirm or modify was properly filed in Mississippi, and under principles of

deference to the court of first filing, the Alabama court should have considered

staying its hand.").

In unanimously adopting the latter interpretation, the Court emphasized the

need for flexibility and practicality in interpreting the venue provisions, within the

broader context of the strong federal policy favoring arbitration:

> The consequence [of a holding that a suit to modify or vacate could only be
> brought in the district where arbitration took place] would be that a
> proceeding to confirm the award begun in a forum previously selected by
> agreement of the parties (but outside the district of the arbitration) would
> need to be held in abeyance if the responding party objected. The objecting
> party would then have to return to the district of the arbitration to begin a
> separate proceeding to modify or vacate the arbitration award, and if the
> award withstood attack, the parties would move back to the previously
> selected forum for the confirming order originally sought.
>
> * * *
>
> Nothing, indeed, would be more clearly at odds with both the FAA's
> 'statutory policy of rapid and unobstructed enforcement of arbitration
> agreements,' Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,
> 460 U.S. 1, 23, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983), or with the
> desired flexibility of parties in choosing a site for arbitration.

Id. at 200-1. Accordingly, the Court concluded that the filing in Mississippi was

proper, despite the fact that the arbitration had taken place in Alabama.

The portion of the Court's opinion that Crockett cites is as follows:

Although the location of the arbitration may well be the residence of one of

the parties, or have some other connection to a contract at issue, in many cases the site will have no relation whatsoever to the parties or the dispute. The parties may be willing to arbitrate in an inconvenient forum, say, for the convenience of the arbitrators, or to get a panel with special knowledge or experience, or as part of some compromise, but they might well be less willing to pick such a location if any future court proceedings had to be held there.

Id. at 201. Thus isolated, Crockett indicates that this passage supports his contention that "litigation and arbitration are not one in the same." See Doc. #36 at 6. Read in context, however, this passage further indicates the need for adaptability and practicality as to venue, as the Court's next sentence goes on to emphasize: "Flexibility to make such practical choices [about what location to specify for arbitration], then, could well be inhibited by a venue rule mandating the same inconvenient venue if someone later sought to vacate or modify the award." Id. As previously explained, concluding that Crockett has submitted to personal jurisdiction in the instant matter is *not* akin to holding that *all* disputes he has with LexisNexis must be litigated in federal court in Ohio.

Indeed, Crockett's jurisdictional theory would result in a cumbersome regime similar to the one rejected by the Supreme Court in the context of venue. Under his interpretation, although he initiated arbitration in Ohio in accordance with the terms of his agreement, LexisNexis was required to seek any declaratory relief concerning arbitration in Texas, or some state other than Ohio where personal jurisdiction over Defendant could not be disputed, (Texas appears to the Court to be the best example as it is Crockett's residence). Then, once any motion practice or trial on that matter was completed, the parties would return to Ohio to begin arbitration, pursuant to their contract and forum selection clause. Inferentially, any

-18-

petition for an entry of judgment based on an arbitration award, or to modify or vacate same, would then have to be filed in Texas, unless Crockett had become subject to personal jurisdiction in Ohio in the interim. The end result of an interpretation requiring that the parties ping-pong between multiple districts for court and arbitration proceedings, would be to increase the complexity, expense, and delay of adjudicating the dispute for the parties, as well as undermining their contractual agreement to arbitrate in a particular location. It would certainly interfere with the FAA's "'statutory policy of rapid and unobstructed enforcement of arbitration agreements,' Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 23, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983), [and] with the desired flexibility of parties in choosing a site for arbitration." Id. at 202.

It is not clear whether Crockett equates a finding that this Court has personal jurisdiction over him in this matter with a conclusion that *all* proceedings, including those relating to the substantive issues in the underlying dispute, whether seeking monetary or equitable relief, or both, must occur here in Dayton, now and forever. If that is his position, nothing in this Court's opinion herein addresses that issue. This Court has decided only the narrow, discrete issue before it, to wit: whether the Plaintiff's declaratory judgment action, over matters regarding the interpretation, scope and enforcement of the arbitration agreement proceeding between the parties, may be brought in this District, based upon in personam jurisdiction gained over the Defendant pursuant to both the arbitration agreement designating Dayton as the location of the arbitration and the initiation of an arbitration proceeding thereunder by the Defendant. This Court's holding does not go beyond this conclusion. Whether personal jurisdiction over the Defendant, for

-19-

this declaratory judgment action on matters regarding the interpretation, scope and enforcement of the arbitration agreement, vests this Court with in personam jurisdiction as to all substantive issues in the underlying dispute between the parties is <u>not</u> decided herein.  Indeed, it may never be necessary to do so. LexisNexis is seeking a declaratory judgment concerning how the arbitration that Crockett has initiated will proceed.  Defendant agreed to conduct any arbitration they initiated with LexisNexis in Ohio, and have actually sought to commence the same.  If a plaintiff's only redress, upon concluding that the arbitration a defendant seeks to initiate is abusive or otherwise inconsistent with their agreement to arbitrate, required filing suit in *defendant's* home state, rather than in the state designated in a forum selection clause, that provision would be undermined, if not rendered meaningless, as any justiciable disagreement that arose during arbitration would threaten to shift the situs of the dispute away from the forum to which the parties had contractually agreed.  <u>Cf</u>. <u>Victory Transport</u>, 336 F.2d at 363. Accordingly, personal jurisdiction over Defendant in this matter, as to the nature of the arbitration (individual or class-wide), is proper in the Southern District of Ohio.

Defendant also argues that the ultimate question of Plaintiff's suit for declaratory relief (whether Crockett may initiate class-based arbitration on behalf of other users and law firms) is not appropriately decided by a court and must be decided in the arbitration process.  The Supreme Court has recognized that parties expect certain "gateway" questions concerning, for example, the validity of arbitration agreements themselves, to be decided by courts, while other structural questions, such as whether an arbitration should be conducted by a single arbiter or a panel, are appropriately decided within the arbitration process.  <u>Green Tree Fin.</u>

<u>Corp. v. Bazzle</u>, 539 U.S. 444 (2003). These principles are sometimes distinguished as referring to "substantive arbitrability" on the one hand, questions to be decided by courts, and "procedural arbitrability" on the other, questions to be decided by arbiters. <u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79, 84 (2002). Crockett is arguing that the question posed by this suit falls into the latter category.

While this contention might have merit, it is currently premature. Whether it is reasonable for a court to exercise personal jurisdiction over a party is a question of state law and constitutional due process (or, as in this case, consent), and the issue that Crockett raises here goes to the merits of Plaintiff's claim for declaratory relief. A court's jurisdiction over the parties must be established before substantive issues are considered, <u>Steel Co. v. Citizens for a Better Env't</u>, 523, U.S. 83, 93-95 (1998) ("the requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception"); <u>accord</u> <u>Bird v. Parsons</u>, 289 F.3d 865, 872 (6th Cir. 2002), and the contention that Plaintiff's claim is structurally unsound in some other regard cannot divest the Court of jurisdiction over Crockett.[2]

_____

[2]In a letter dated March 15, 2011, Crockett's counsel notified the Court of two recent circuit court decisions, to wit: <u>Vilches v. Travelers Cos.</u>, 2011 U.S. App. LEXIS 2551 (3d Cir. 2011), and <u>In re: American Express Merchants' Litigation</u>, 2011 U.S. App. LEXIS 4507 (2d Cir. 2011). The Court has reviewed these decisions, but finds that they are inapplicable to the personal jurisdiction issue presently under consideration. <u>Vilches</u> addresses whether a dispute's amenability to class-based arbitration is an issue of substantive or procedural arbitrability or, in other words, whether a court or an arbitrator should make such a determination. <u>American Express</u> addresses whether the contractual waiver of a

Accordingly, the Court does not address this argument in any further depth, as it is not relevant to the personal jurisdiction issue at hand.

### B. Minimum Contacts

LexisNexis argues, alternatively, that Crockett is amenable to personal jurisdiction in Ohio under a traditional "minimum contacts" analysis. Plaintiff contends that by using its online search engine for legal research, Crockett transmitted data to, and received data from, LexisNexis's computer servers located in Dayton, and that personal jurisdiction is therefore reasonable. This Court declines to address this argument, given this Court's narrow holding, supra, that by agreeing to arbitration in Dayton, located within the Southern District of Ohio, and initiating the arbitration proceeding therein, Defendant has implicitly consented to personal jurisdiction over him, regarding the Plaintiff's declaratory judgment action on matters regarding the interpretation, scope and enforcement of the arbitration agreement.

---

right to class-based arbitration is substantively unconscionable. While these issues may be relevant to the ultimate issue in this case, they are, for the same reasons stated above, unnecessary to the resolution of Defendant's challenge to this Court's personal jurisdiction.

III. Conclusion

      For the foregoing reasons, Defendant Craig M. Crockett's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. #20), is overruled, in its entirety.


March 25, 2011

                                   WALTER HERBERT RICE, JUDGE
                                   UNITED STATES DISTRICT COURT


Copies to:
Counsel of Record.