IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)

| | |
|---|---|
| REED ELSEVIER INC. through its LexisNexis Division, | CASE NO. 3:10 CV 248 |
| | Judge Walter H. Rice |
| Plaintiff, | |
| v. | |
| CRAIG M. CROCKETT, et al., | NOTICE BY PLAINTIFF REED ELSEVIER INC. OF RECENT AUTHORITY |
| Defendants. | |

In accordance with its professional obligations, Plaintiff Reed Elsevier Inc. ("Reed") informs the Court of a recent decision, Jock v. Sterling Jewelers, Inc., No. 10-3247-CV (2d Cir. July 1, 2011) (copy attached), that reversed a district court decision cited in Reed's reply memorandum in support of its motion for summary judgment [doc. no. 34, pp. 11-13].

The appeal in Jock was decided on a narrow ground having no applicability to the present case, and the opinion is otherwise neither binding nor persuasive authority. Jock arose from the courts' review of a previously-issued award by an arbitrator that permitted the case to go forward as a class arbitration. The "issue of whether the [arbitration] agreement permitted class arbitration" had been "properly" and "squarely presented to the arbitrator" by both parties. Consequently, the propriety of submitting the question of class arbitrability to the arbitrator was not at issue. *See* Maj. Slip Op. at 18-19 ("there is no escaping the fact that the parties submitted [the class arbitrability] question to the arbitrator for a decision"). Rather, the sole issue on appeal was the correct standard of review that the courts should apply to the arbitrator's determination that class arbitration was permissible under the Jock parties' agreement.

The arbitrator's award in Jock was issued before the decision in Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp., __ U.S. __, 130 S. Ct. 1758 (2010)), and the arbitrator had relied on the decision of the Second Circuit in Stolt-Nielsen that was later reversed by the Supreme Court. Dissent Slip Op. at 3. The district court vacated the arbitrator's award on grounds that it was incompatible with the Supreme Court's subsequently-issued decision.

In reversing the district court, the Second Circuit explained "that the primary thrust of our decision is whether the district court applied the appropriate level of deference when reviewing the [previously-issued] arbitration award." Maj. Slip Op. at 20. Applying a "substantial deference" standard, *id.*, at 20, the majority of the Second Circuit panel concluded that "[r]egardless of whether the arbitrator was right or wrong in her analysis, she had the authority to make the decision, and the parties are bound by it." *Id.*, at 25.[1] The panel held that Supreme Court's later-issued decision in *Stolt-Nielsen* did not provide grounds for disturbing the arbitrator's ruling: "Our Circuit has never held that an intervening change of law, standing alone, provides grounds for vacating an otherwise proper arbitral award." Maj. Slip Op. at 20.

That rule of decision applied in Jock has no relevance to the case before this Court. Unlike the respondent in Jock, LexisNexis has not agreed to submit the question of class arbitrability to an arbitrator. Even more significantly, this Court is not reviewing an arbitrator's

---

[1] In finding that the arbitrator's decision had a "colorable justification" to which the court could defer, the majority noted that arbitration clause in Jock included a provision that gave the arbitrator the "power to award any types of legal or equitable relief that would be available in a court of competent jurisdiction." The court found that this special clause created the "right to seek classwide relief" in arbitration. Maj. Slip. Op. at 23, 24. No such language appears in the arbitration clause at issue in the present case.

2

award on that (or any) issue. There is no arbitration award to which this Court even arguably need defer.

In *dicta*, the majority in Jock also suggested that they would apply a very narrow construction of the Supreme Court's holding in Stolt-Nielsen. Maj. Slip Op. at 11-12. As Judge Winter observed in his dissenting opinion in Jock, the majority would read Stolt-Nielsen as limited to its most peculiar fact – that the parties had entered into a "sui generis and idiosyncratic stipulation" of a fact that was, in all events, self-evident – that their "arbitration clause was 'silent' as to class arbitration." Dissent Slip Op at 2-3 & n. 2.

The majority postulated that because "unlike [in] *Stolt-Nielsen,* the parties have not stipulated that the agreement is 'silent' as to class arbitration," the arbitrator was free to "conclude[] that the arbitration agreement . . . manifested an intent to allow class arbitration," Maj. Slip Op. at 19, notwithstanding the Supreme Court's holding that "'mere silence' on the issue of class arbitration . . . cannot give rise to 'consent to resolve . . . disputes in class proceedings.'" *Id.* 13 (quoting *Stolt-Nielsen*, 130 S. Ct. at 1776). Judge Winter disagreed, concluding that *Stolt-Nielsen* is "a binding precedent on all fours" and that its core holding -- that the requisite "consent to class arbitration cannot be inferred from an agreement's failure to preclude it" – is not limited to cases where the parties have entered "formal stipulations as to contractual silence." Dissent Slip Op. at 1-3, 6.

Judge Winter further noted that the majority's narrow reading of *Stolt-Nielsen* is impermissible in light of the Supreme Court's rules; would run afoul of the Court's more recent reaffirmation, in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), that the Federal Arbitration Act does not permit arbitrator to impose class arbitration without the "requisite

3

consent;" and ignores the Court's "lengthy" expansion in Concepcion of its explanation of why, because the "shortcomings of class arbitration are substantial," it is improper to presume consent to class arbitration. Dissent Slip Op. at 3 n. 2, 7-8 (citing Sup. Ct. R. 10 and Concepcion, 131 S. Ct. at 1750-52).

Thus, for the reasons stated in the original briefing, this Court's grant of Reed's motion for summary judgment [Doc. No. 39, sustaining Doc. No. 7] should continue to be sustained.

Respectfully submitted,

s/ Charles J. Faruki
Charles J. Faruki (0010417)
    Trial Attorney
Thomas R. Kraemer (0060120)
FARUKI IRELAND & COX P.L.L.
500 Courthouse Plaza, S.W.
10 North Ludlow Street
Dayton, OH 45402
Telephone: (937) 227-3705
Telecopier: (937) 227-3717
Email: cfaruki@ficlaw.com

Edwin M. Baum (admitted *pro hac vice*)
Emily Stern (admitted *pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036-8299
Telephone: (212) 969-3175
Telecopier: (212) 969-2900
Email: ebaum@proskauer.com

Attorneys for Plaintiff
Reed Elsevier Inc.

# CERTIFICATE OF SERVICE

I certify that on the 12th day of July, 2011, I electronically filed the foregoing Notice by Plaintiff Reed Elsevier Inc. of Recent Authority with the Clerk of Courts using the CM/ECF system, which will send notification of such filing to CM/ECF participants, and I certify that I have mailed by United States Postal Service the document to the non-CM/ECF participants:

>Patrick F. Haggerty (0019703)
>Lindsey Carr Siegler (0074182)
>FRANTZ WARD LLP
>2500 Key Center
>127 Public Square
>Cleveland, Ohio 44114-1230
>Telephone: (216) 515-1660
>Facsimile: (216) 515-1650
>Email: haggerty@frantzward.com
>       lcarrsiegler@frantzward.com
>
>Blair C. Fensterstock
>FENSTERSTOCK & PARTNERS LLP
>30 Wall Street
>New York, New York 10005-2201
>Telephone: (212) 785-4100
>Facsimile: (212) 785-4040
>Email: bfensterstock@fensterstock.com
>
>Attorneys for Defendants

        s/ Charles J. Faruki
        Charles J. Faruki

500573.1